**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In re                                              :          Case No. 12-cv-03337 (JG)
                                                   :
CHRISTINE PERSAUD                                  :
                                                   :
                    Debtor.                        :          Chapter 7 Case No. 10-44815 (ESS)
                                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X


<u>**APPELLEE'S BRIEF**</u>


By:     **TROUTMAN SANDERS LLP**
        John P. Campo, Esq.
        Lee W. Stremba, Esq.
        Brett D. Goodman, Esq.
        The Chrysler Building
        405 Lexington Avenue
        New York, NY 10174
        Telephone:  (212) 704-6000

        *Attorneys for Appellee John S.*
        *Pereira, Chapter 7 Trustee for Estate*
        *of Christine Persaud*

20140132v8

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

STANDARD OF REVIEW ................................................................................. 2

STATEMENT OF THE CASE ............................................................................ 4

THE MEMORANDUM DECISION ................................................................... 7

STATEMENT OF FACTS .................................................................................. 9

ARGUMENT ..................................................................................................... 15

      POINT I       THE BANKRUPTCY COURT DID NOT ERR IN ITS
                    MEMORANDUM DECISION AS KLEIN FAILED TO MEET
                    HIS HEAVY BURDEN TO PROVE CAUSE FOR
                    DISQUALIFICATION OF TROUTMAN ............................................. 15

             A.      Klein misrepresents and misapplies the standard for
                    disqualification ....................................................................... 15

             B.      Klein has failed to demonstrate that the terminated China Project
                    and Troutman's current engagement by the Trustee are
                    "substantially related" or that Troutman had access to relevant
                    confidential information ......................................................... 18

      POINT II     THE BANKRUPTCY COURT DID NOT ERR IN
                    OVERRULING KLEIN'S OBJECTION TO THE RETENTION
                    OF TROUTMAN AS TROUTMAN COMPLIED WITH THE
                    REQUIREMENTS OF BANKRUPTCY RULE 2014 ........................... 23

CONCLUSION .................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Argo Marine Systems, Inc. v. Camar Corp.,
  755 F.2d 1006 (2d Cir. 1985) ...............................................................................3

Armada (Singapore) Pte Ltd v. Shah (In re Ashapura Minechem Ltd),
  Case No. 11-14668 (JMP), 2012 U.S. Dist. LEXIS 90230 (S.D.N.Y. June 28, 2012) ............3

Bennett Silvershein Assoc. v. Furman,
  776 F. Supp. 800 (S.D.N.Y. 1991) ....................................................................8, 19

Correspondence Services Corp. v. J.V.W. Investment Ltd.,
  2000 WL 1174980, *10 (S.D.N.Y. 2000) .............................................................17

Exco Res. v. Milbank,
  Case No. 02 Civ. 5638 (BSJ), 2003 U.S. Dist. LEXIS 1442 (S.D.N.Y. Jan. 28, 2003)......3, 15

Government of India v. Cook Industries, Inc.,
  569 F.2d 737 (2nd Cir. 1978) .............................................................................17

Hempstead Video, Inc. v. Vill. of Valley Stream,
  409 F.3d 127 (2d Cir. 2005) .............................................................................7, 16

Hull v. Celanese Corp.,
  513 F.2d 568 (2d Cir. 1975) ...............................................................................16

In re Persaud,
  467 B.R. 26 (Bankr. E.D.N.Y. 2012) ......................................................................1

Inwood Labs. v. Ives Labs.,
  456 U.S. 844 (U.S. 1982) .....................................................................................3

Pastor v. Trans World Airlines, Inc.,
  951 F. Supp. 27 (E.D.N.Y. 1996).....................................................................17, 18

STATUTES

11 U.S.C. § 101, et seq. ............................................................................................4

OTHER AUTHORITIES

Fed. R. Bankr. P. 8010, 8010(a)(1), 8010(a)(1)(C)....................................................2

Fed. R. Bankr. P. 8020 .............................................................................................2

Fed. R. Bankr. P. 8013 .........................................................................................2, 4

Fed. R. Bankr. P. 8013, Notes ........................................................................................... 3

Fed. R. Civ. P. 52 .............................................................................................................. 3

Fed. R. Bankr. P. 2014 ............................................................................... 4, 5, 9, 23, 24, 25

20140132v8

## PRELIMINARY STATEMENT

Prior to her bankruptcy filing, Christine Persaud ("Persaud" or "Debtor") and Abraham Klein ("Appellant" or "Klein") were adversaries in litigation over competing claims to ownership of a home health care business known as Caring Health Agency ("Caring"). Persaud's claim to ownership of all or part of Caring became property of her bankruptcy estate and therefore is a potential asset to be investigated and pursued by John S. Pereira, Esq., in his capacity as Chapter 7 trustee ("Appellee" or "Trustee") of the estate of Persaud.  Litigation between Klein and the Trustee with respect to the ownership of Caring is already pending in the bankruptcy case.

Unfortunately, Klein has adopted a strategy of obstruction and obfuscation to make the Trustee's investigation and litigation of potential claims against Klein as time consuming and expensive for the estate as possible.  The instant appeal is a prime example of Klein's unremitting obstructionist strategy.  To thwart the Trustee's efforts, Klein filed a frivolous objection to the Trustee's engagement of the firm of Troutman Sanders LLP ("Troutman") as the Trustee's counsel based upon a fabricated alleged conflict of interest.  The Honorable Elizabeth S. Stong, United States Bankruptcy Judge, gave Klein every possible opportunity to support his objection with competent and credible evidence, including discovery of Troutman and a full evidentiary hearing.  Judge Stong ultimately rendered a very thorough and thoughtful Memorandum Decision on March 5, 2012 (R. 61 at 1600-1630)[1] (the "Memorandum Decision")[2] in which she found, *inter alia*, that Klein's testimony before the Bankruptcy Court lacked credibility, and contemporaneously entered an Order in conformity with the Memorandum

---

[1] All references to ("R. ___ at ___") shall refer to the record on appeal [Doc. No. 1] (the "Record on Appeal"), with the first number referencing the document attached as part of the Record on Appeal and the second number(s) referencing the relevant page(s) of the Record on Appeal.
[2] In re Persaud, 467 B.R. 26 (Bankr. E.D.N.Y. 2012).

Decision (R. 52 at 1290-1291) (the "<u>Retention Order</u>"), which approved the retention of Troutman as general and bankruptcy counsel to the Trustee and overruled the objection of Klein to Troutman's retention in all respects.

Immediately following the Bankruptcy Court's denial of Klein's frivolous objection, Klein made an equally frivolous motion for reconsideration of the Retention Order, and upon the Bankruptcy Court's denial of the motion for reconsideration, Klein filed the instant equally frivolous appeal of the Retention Order.  For the reasons set forth below, the Trustee believes that the Memorandum Decision is unassailable and the Retention Order must be affirmed.  The Trustee further believes that this Court can and should award sanctions against Klein under Rule 8020 of the Federal Rule of Bankruptcy Procedure ("<u>Fed. R. Bankr. P.</u>" or the "<u>Bankruptcy Rules</u>"), so that Klein will be discouraged from pursuing his obstructionist litigation tactics in the future.  The Trustee intends to seek such sanctions in a separate motion.

## STANDARD OF REVIEW

As a threshold matter, Bankruptcy Rule 8010(a)(1)(C) requires the brief of an appellant to contain under appropriate heading (and in the order indicated in Bankruptcy Rule 8010(a)(1)) "a statement of the issues presented <u>and the applicable standard of appellate review</u>" (emphasis added).  Fed. R. Bank. P. 8010.   Appellant's brief [Doc. No. 3] (the "<u>Appellant's Brief</u>") fails to provide any reference to, or discussion of, Bankruptcy Rule 8010 or the applicable standard of review generally, under separate heading or otherwise.  This Court would accordingly be justified in declining to consider the Appellant's Brief.  If the Court does consider the Appellant's Brief, it will quickly become apparent that the Appellant failed to discuss the applicable standard of review because he cannot possibly satisfy the standard.

The standard by which this Court is to review an order of the Bankruptcy Court is set forth in Bankruptcy Rule 8013, which states:

- 2 -

20140132v8

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with such instructions for further proceedings.  Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

This rule accords to the findings of a bankruptcy judge the same weight given the findings of a district judge under Rule 52 of the Federal Rules of Civil Procedures (the "Federal Rules").  See Fed. R. Bankr. P. 8013, Notes of Advisory Committee.  As the Supreme Court has stated, "[Federal Rule 52] recognizes and rests upon the unique opportunity afforded the trial court judge to evaluate the credibility of witnesses and to weigh the evidence.  Because of the deference due the trial judge, unless an appellate court is left with the definite and firm conviction that a mistake has been committed, it must accept the trial court's findings." Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844 (1982) (internal citations omitted); see Argo Marine Systems, Inc. v. Camar Corp., 755 F.2d 1006 (2d Cir. 1985); Armada (Singapore) Pte Ltd v. Shah (In re Ashapura Minechem Ltd), No. 11-14668, 2012 U.S. Dist. LEXIS 90230, at *6 (S.D.N.Y. June 28, 2012) ("Credibility determinations by bankruptcy courts are reviewed for clear error, as are decisions resting on physical or documentary evidence or inference from other facts.").  Thus, this Court is to accept the Bankruptcy Court's findings of fact unless they are clearly erroneous.  See Exco Resources, Inc. v. Milbank, Tweed, Hadley & McCloy LLP (In re Enron), No. 02 Civ. 5638, 2003 U.S. Dist. LEXIS 1442, at *12 (S.D.N.Y. Jan. 28, 2003).

As clearly set forth in the Memorandum Decision, and as will be shown by this Appellee's Brief, the arguments raised by Klein in opposition to Troutman's retention, and repeated in Appellant's Brief, lack credibility and are at odds with the substantial and persuasive evidence that no conflict exists that would justify overturning the Retention Order and disqualifying Troutman as counsel to the Trustee.  Appellant cannot, and has not, in any way

demonstrated that the Bankruptcy Court's findings of fact were clearly erroneous or that this Court should not afford such findings the great deference required under Bankruptcy Rule 8013.

## STATEMENT OF THE CASE

On May 26, 2010, Persaud filed a petition for relief under Chapter 11 of Title 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") in the Bankruptcy Court.  On April 8, 2011, Persaud's Chapter 11 case was converted to a Chapter 7 liquidation case, Case No. 10-44815-ESS (the "Chapter 7 Case"), and on April 13, 2011, Appellee was appointed Chapter 7 trustee for the estate of Persaud.

On August 10, 2011, the Trustee filed an application to retain Troutman Sanders LLP as general and bankruptcy counsel (R. 5 at 13-25) (the "Application").  The Trustee's Application was supported by, *inter alia*, a *Declaration of John P. Campo in Accordance with Federal Rule of Bankruptcy Procedure 2014*, dated August 9, 2011.  John P. Campo ("Campo") is the Troutman partner primarily responsible for the engagement**.**

On August 15, 2011, Klein filed an objection to the Trustee's proposed engagement of Troutman (R. 7 at 43-95) (the "Klein Objection").  The Klein Objection was supported by an Affidavit of Klein sworn to on August 15, 2011 (R. 7 at 61-95; R. 59 at 1372-1407) (the "Klein Affidavit").  As reflected in the Klein Objection, Appellant purports to be a creditor of the Persaud estate.  He also purports to be the sole owner of Caring, a home health care business at one time operated by Persaud as a sole proprietorship.  Klein's claim of sole ownership of Caring is based in part on a pre-petition arbitration award rendered on default in favor of Klein and against Persaud.  Prior to and since her bankruptcy filing, Persaud has disputed Klein's claim of sole ownership of Caring, and Persaud has claimed that Klein has improperly transferred assets of Caring for his own benefit.  In light of Persaud's professed interest in Caring, the Trustee has sought discovery of Klein and Caring in the Chapter 7 Case with respect to the ownership and

- 4 -

operations of Caring, and litigation between the Trustee and Klein is pending in the Bankruptcy Court with respect to the conflicting claims of ownership of Caring.

Klein argues in the Klein Objection that the Trustee's Application to retain Troutman should be denied on the grounds that Troutman represented Klein in connection with a proposed real estate investment in China back in 2008 and that, in connection with the prior engagement, Troutman was provided with confidential information that the Trustee could use in pursuing claims against Klein in the Chapter 7 Case.

The Trustee filed papers in response to the Klein Objection, including, *inter alia*, a *Declaration of John S. Pereira in Response to the Objection of Abraham Klein to the Objection of Abraham Klein to the Trustee's Application to Retain Troutman Sanders LLP*, dated August 19, 2011 (R. 11 at 107-123); a *Supplemental Declaration of John P. Campo in Accordance with Federal Rule of Bankruptcy Procedure 2014*, dated August 19, 2011 (R. 9 at 99-101) (the "Supplemental 2014 Declaration"); and an *Affirmation of John P. Campo in Response to the Objection of Abraham Klein to the Trustee's Application to Retain Troutman Sanders LLP*, dated August 19, 2011 (R. 10 at 102-106) (the "Campo Affirmation in Response").

On September 6, 2011, in further support of the Klein Objection, Klein filed a further objection to the Trustee's Application (R. 16 at 142-209) along with a *Supplemental Affidavit of Abraham Klein* dated September 5, 2011 (R. 16 at 185-206) (the "Klein Supplemental Affidavit"), and on September 7, 2011, in response to the Klein Supplemental Affidavit, the Trustee filed an *Affirmation of Aurora Cassirer in Response to the Further Objection of Abraham Klein to the Trustee's Application to Retain Troutman Sanders LLP* (R. 17 at 210-211) (the "Cassirer Affirmation").  Aurora Cassirer ("Cassirer") is, and was at all times relevant to this appeal, the managing partner of Troutman's New York City office.

20140132v8

Over nine (9) days between September 15, 2011 and November 28, 2011, the Bankruptcy Court conducted an evidentiary hearing with respect to the Trustee's Application and the Klein Objection.  Prior to the commencement of the hearing, the Trustee and Klein submitted a *Joint Pre-Hearing Statement* (R. 20 at 221-237), and at the direction of the Bankruptcy Court following the initial hearing day, the parties submitted an *Amended Joint Pre-Hearing Statement* (R. 23 at 399-431) (the "Pre-Hearing Statement") which superseded the earlier submission. During the hearing, the Bankruptcy Court heard testimony on behalf of the Trustee from Campo and Cassirer, both of whom in essence repeated the substance of their previously filed affirmations and submitted to cross-examination by Klein's counsel.  The Bankruptcy Court also heard testimony on behalf of the Klein Objection from Klein and his brother, Hershel Klein.  At the conclusion of the hearing, the Bankruptcy Court also took into evidence an affidavit of Professor Bruce Green, an ethics expert, submitted by Klein.  (R. 59 at 1446-1496.)

On September 23, 2011, pending the conclusion of the evidentiary hearing, the Bankruptcy Court entered an Order (R. 26 at 549-550), authorizing the Trustee to retain Troutman as general and bankruptcy counsel for all matters except as to claims that the Trustee may assert against Klein or his company, Global Realty Ventures Ltd. ("GRV").  As reflected in said Order, Klein did not object to the relief therein granted.

On March 5, 2012, the Bankruptcy Court issued its Memorandum Decision approving Troutman's retention for all purposes and overruling the Klein Objection in all respects.  Based upon such Memorandum Decision, the Bankruptcy Court entered its Retention Order.

On March 14, 2012, Klein filed a motion seeking reconsideration of the Memorandum Decision and Retention Order (R. 54 at 1334-1339) (the "Motion for Reconsideration").  On April 26, 2012, the Bankruptcy Court issued an Order denying Klein's Motion for

Reconsideration (R. 56 at 1347-1352), and on May 5, 2012, Klein filed the instant appeal. On August 27, 2012, in support of his appeal, Klein submitted the Appellant's Brief to this Court.

## THE MEMORANDUM DECISION

In the Memorandum Decision the Bankruptcy Court held "that Mr. Klein has not shown that Troutman should be disabled from serving as general and bankruptcy counsel for the Trustee on behalf of the Debtor's estate as to claims that the Trustee may assert against Mr. Klein or GRV, and to that extent, Mr. Klein's objection is overruled." (R. 61 at 1629.) The Bankruptcy Court expressly stated that it "considered all of the other arguments advanced by Mr. Klein and concludes that they are without merit." (R. 61 at 1630.)

In arriving at its decision, the Bankruptcy Court first determined that the Trustee had shown that Troutman is disinterested within the meaning of section 327 of the Bankruptcy Code. (R. 61 at 1616.)  Klein does not contest that ruling on this appeal.  Next, the Bankruptcy Court applied Second Circuit case law and New York's rules of professional conduct to conclude that Troutman should not be disqualified as general and bankruptcy counsel for the Trustee with respect to any claims on behalf of the Trustee against Klein or GRV.  The Bankruptcy Court employed a three-part test in considering whether to disqualify Troutman as counsel.  (R. 61 at 1617-1618.)[3]  As set forth in the Memorandum Decision, the Bankruptcy Court first inquired whether GRV or Klein was an actual or prospective client of Troutman.  (R. 61 at 1618.)  The Bankruptcy Court found that based on its review of the entire record, it was uncontested that

---

[3] In the words of the Bankruptcy Court:
   Courts in this Circuit applying New York law use a three-part test when a former client seeks to disqualify its opponent's lawyer. The **movant must show**:
   (1)     the moving party is a **former client** of the adverse party's counsel;
   (2)     there is a **substantial relationship** between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
   (3)     the attorney whose disqualification is sought had access to, or was likely to have had **access to, relevant privileged information** in the course of his prior representation of the client.
(R. 61 at 1618); Hempstead Video, Inc. v. Vill. of Valley Stream, 409 F.3d 127, 133 (2d Cir. 2005) (quoting Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983) (Emphasis added))

- 7 -

GRV was an actual client of Troutman and concluded that Klein was a prospective client of Troutman, with respect to the China Project. (R. 61 at 1621.)

The Bankruptcy Court next considered whether GRV remained a client of Troutman at the time that the Trustee sought to retain the firm in the Chapter 7 Case. (R. 61 at 1621.) In that regard, the Bankruptcy Court found:

> Here, the record shows that from late December 2008, the China Project was, at the very most, "on hold." The record does not indicate that Troutman and GRV had communications about the China Project, or that Troutman and GRV undertook any activity in furtherance of it. And Troutman did not record or bill time to the matter. Rather, in accordance with the firm's practice, the file was closed after it had been inactive for a year. While it is unlikely that a client's activity, in isolation from counsel, could unilaterally prolong an attorney-client relationship, the record similarly does not indicate that GRV actively pursued the China Project during this period.
>
> Accordingly, based on the entire record, the Court concludes that GRV was not a current client of Troutman at the time that the Trustee sought to retain the firm. (R. 61 at 1624.)

Next, the Bankruptcy Court considered whether there is a "substantial relationship" between the subject matter of Troutman's prior representation of GRV and potential representation of Klein and the issues raised in the Chapter 7 Case. (R. 61 at 1624.) After considering in detail the evidence presented by Klein, the Bankruptcy Court concluded its analysis of the "substantial relationship" issue, as follows:

> Here, as noted above, the China Project was the subject matter of Troutman's actual and potential retention in 2008. The record shows that the China Project, a real estate venture in China, is not substantially related to claims that the Trustee may assert against Mr. Klein or GRV. That is, Mr. Klein has not established that there is a relationship between these matters that is "'patently clear,' or . . . that the actions are 'identical' or 'essentially the same.'" *Bennett Silvershein Assocs.*, 776 F. Supp. at 803.
>
> Nor has Mr. Klein shown that "information . . . disclosed in that earlier consultation is useful in the later case." *Bennett Silvershein Assocs.*, 776 F. Supp. at 804. While he aims to paint a different picture through his testimony and argument, Mr. Klein's statement that he provided Troutman with a "roadmap to everything about my finances specifically related to Caring" lacks credibility and is at odds with substantial and persuasive evidence to the contrary. This evidence includes contemporaneous e-mails, documents, and testimony. 11/14/11 Tr. 28:1- 2.

- 8 -

Accordingly, based on the entire record, the Court concludes that there is not a substantial relationship between the subject matter of Troutman's representation of GRV and potential representation of Mr. Klein, and the issues in the present retention. Id.
(R. 61 at 1626-1627.)

Finally, the Bankruptcy Court addressed whether the Trustee's Application met the disclosure requirements set forth in Bankruptcy Rule 2014.  In that regard, the Bankruptcy Court held as follows:

> Here, as the record reflects, Mr. Campo's first Bankruptcy Rule 2014 declaration does not disclose Troutman's prior representation of GRV or prospective representation of Mr. Klein. At the same time, the record also reflects that when these matters were brought to the Trustee's attention, the Trustee promptly filed a supplemental Bankruptcy Rule 2014 declaration of Mr. Campo that set forth that information.

> Accordingly, based on the entire record, the Court concludes that taken as a whole, the disclosures made by the Trustee and Troutman are sufficient to satisfy the requirements established by Bankruptcy Rule 2014. The Court also finds that the timing and circumstances of these disclosures do not provide a basis to dislodge the Trustee's choice of counsel or to invoke the harsh remedy of disqualification.  (R. 61 at 1629.)

## STATEMENT OF FACTS

On July 30, 2008, Hershel Klein called the New York office of Troutman and spoke with Cassirer concerning the possible engagement of Troutman in connection with a proposed real estate transaction in Heze Shandong Province, China.  Later that day, Hershel Klein sent an email to Cassirer, copied to Klein (R. 59 at 1500-1508), describing the proposed transaction, which was to involve a commercial and residential real estate investment with a Chinese national, Mr. Zheng[4] (the "China Project").  The email stated, in part, "Mr. Zheng (Chinese guy) is looking for us to invest 40% and get 40% of the profit and he will invest 60% and get 60% of the profit," and the email concluded: "We need Due diligence to be done to verify **all** the expense and revenue numbers are accurate [¶] We need due diligence to be done to verify that all the logistical things are correct that all the details that need to happen to make this project

---

[4] Later documents spell this name "Zhang."

happen in reality actually can happen.  And last but not least we need the legal structure to be set up in a way that it will work and have everybody protected."  (R. 59 at 1501.)

Still later on July 30, 2008, Cassirer suggested to Klein and Hershel Klein, via email, that they discuss the proposed transaction with Edward Epstein ("Epstein"), a partner in Troutman's Shanghai office.  A call among Hershel and Abraham Klein, Cassirer and Mr. Epstein was held that same night.  (R. 23 at 399-431,¶¶ I.A.8-9.)  Thereafter, although Cassirer was copied on some emails between the Kleins and Troutman's Shanghai office, she had no substantive involvement in the China Project engagement, nor did she ever bill any time to the China Project engagement.  As Cassirer stated in the Cassirer Affirmation:

> 3.      Although I am familiar with the firm's prior representation of GRV, Mr. Klein overstates my involvement with that project when he describes me as the "point person" on that matter.  I am a litigator, and I lacked the expertise to assist GRV with the legal issues associated with a business venture in China.  Accordingly, my partner, Edward Epstein of our Shanghai office, along with a former Troutman associate, Tian Wang, performed all of the legal services that Troutman provided to GRV.  Although these two attorneys apparently copied me as a courtesy on some of their correspondence with GRV, I never performed any substantive legal work on the matter, never billed any time to the client in connection with the prior representation, and never became privy to any confidential information.  (R. 17 at 210-211, ¶ 3.)

In support of his contention that there was a "substantial relationship" between the China Project engagement and Troutman's work for the Trustee, Klein has asserted that during the calls with Cassirer and Epstein around July 30, 2008, the Kleins provided Troutman with confidential information concerning Klein's ownership interest in Caring that will be useful to the Trustee in pursuing claims to an interest in Caring on behalf of the Persuad estate.  Klein's position boils down to the testimony of Klein, which is often quoted in Appellant's Brief, that Klein provided Troutman with "a roadmap to everything about my finances specifically related to Caring" which the Trustee might be able to use to "take away my rights . . . in Caring."  (R. 36 at 955, Tr. 11/14/11 28:1-5.)

- 10 -

During cross-examination, in direct conflict with his "roadmap" testimony, Klein admitted that he never provided to Troutman any personal balance sheets, income statements, tax returns, bank statements, brokerage statements or credit card statements (R. 36 at 955, Tr. 11/14/11 28:11-23), and he further admitted that he never provided Troutman with any balance sheet, income statements or other financial statements for Caring; any tax returns, accounting records or contracts for Caring; any lists of transfers made by Caring to any other party or documentation of such transfers; copies of any proposed contracts between Caring and any other party; specifically any proposed factoring agreement with Caring; or any documentation of ownership of Caring (R. 36 at 955-957, Tr. 11/14/11 28:24-30:2).   In addition, Klein admitted that he never asked Troutman to review any draft contracts between Caring and any other party or to communicate with anyone on behalf of Caring (R. 36 at 959, Tr.  11/14/11 32:1-7); that he was not aware of any email communication with Troutman that mentions Caring (R. 36 at 960, Tr. 11/14/11 33:18-21) or any email communication with Troutman that refers to Persaud (R. 36 at 961, Tr. 11/14/11 34:9-11); and that Troutman's Engagement Letter for the China Project engagement does not mention Caring (R. 36 at 961, Tr. 11/14/11 34:12-18).   And later, the Bankruptcy Court asked Klein whether he could identify any document among over 120 exhibits presented by Klein that "includes the precise information, your phrase, that you provided to Troutman Sanders in connection with the China project that was of this financial and confidential nature" (R. 36 at 983-984, Tr. 11/14/11 56:13-57:11) to which Klein responded, "It's not in the documents."  (R. 36 at 984, Tr. 11/14/11 Tr. 57:12.)

In its Memorandum Decision, the Bankruptcy Court focused on Klein's testimony as aforesaid and found it to lack credibility, as follows:

> Nor has Mr. Klein shown that "information . . . disclosed in that earlier consultation is useful in the later case." *Bennett Silvershein Asocs.*, 776 F. Supp. at 804.  While he aims

to paint the picture through his testimony and argument, Mr. Klein's statement that he provided Troutman with a "roadmap to everything about my finances specifically related to Caring" lacks credibility and is at odds with substantial and persuasive evidence to the contrary.  This evidence includes contemporaneous e-mails, documents, and testimony. 11/14/11 Tr. 1-2. (R. 61 at 1627.)

On August 1, 2011, Mr. Epstein sent an email to Klein, copied to Hershel Klein, proposing that the real estate consulting firm Knight Frank be retained to perform the "preliminary due diligence into the land development issues and pricing" that the Kleins had indicated they needed in order to determine whether they would proceed with the China Project. (R. 59 at 1516-1549.)  On August 4, 2008, Hershel Klein emailed to Cassirer, "Based on the numbers below it seems that from a economical point of view it may make more sense to do the $$ Due diligence first so to rule out the potential issues on that end for a lower cost and then if that part checks out OK we can move forward on the legal end.  ¶ What do you think?" (R. 23 at 402, ¶ I.A.12.) On the same day, Epstein emailed to Klein:  "Abe:  I would be happy to coordinate this for you.  I will charge you at our hourly rates to do so.  If Knight Frank's report is positive, we can then go ahead with the preliminary legal due diligence…"  (R. 23 at 402, ¶ I.A.13.)  In response to Mr. Epstein's email, Hershel Klein sent an email that same day, stating **"I think that is a good idea that you set it up with them but I don't think it is beneficial to filter all back and forth thru you as it would ring up unnecessary legal fees. ¶**  Lets get is setup and started with the process and then when that checks out we can move forward accordingly." (R. 23 at 402-403, ¶ I.A.13.)  (Emphasis added)

The record reflects no substantive activity at Troutman concerning the China Project for most of August, 2008, all of September and October 2008 and the first half of November, 2008. On November 11, 2008, after Knight Frank had provided its due diligence services, Klein emailed Epstein to request assistance in establishing a Memorandum of Understanding with Mr.

Zhang.  To that end, on November 12, 2008, Troutman Sanders provided a draft Letter of Intent for the Kleins to review.  Emails were exchanged between November 12, 2008, and November 23, 2008, between Abraham Klein and Troutman Sanders regarding the draft Letter of Intent. On November 23, 2008, Hershel Klein sent an email to Troutman advising of the additional proposed changes to the Letter of Intent.  (R. 23 at 402-403, ¶¶ I.A.17-20.)  On November 24, 2008, Mr. Wang responded by email with comments regarding the Letter of Intent.  (R. 59 at 1585-1595.)   Mr. Wang also indicated in his email "On a separate note, attached please find the Engagement Letter for GRV." (R. 59 at 1587.)  The attached Engagement Letter is addressed to Klein but references "Engagement of Troutman Sanders LLP by Global Realty Ventures ("GRV"), Retainer Letter – Project Juancheng." Global Realty Ventures, or "GRV" was the entity formed by Klein and chosen by Klein to be the investment vehicle for the China Project. (R. 23 at 399, ¶¶ I.A.1-2.)

Consistent with Hershel Klein's expressed desire not to "ring up unnecessary legal fees," Troutman did not bill any time to the China Project engagement and did not open a new client account until Klein requested that Troutman draft a Memorandum of Understanding or Letter of Intent for the China Project.  Thus, Troutman's new client form (R. 59 at 1555-1556) indicates that Troutman opened a client account for Global Realty Ventures on November 17, 2008, and Troutman sent its proposed engagement letter to Klein on November 24, 2008. (R. 23 at 405, ¶ I.A.21.)  In addition, as reflected in the Pre-Hearing Statement at paragraph 27, on December 10, 2008, Troutman sent its first invoice for the engagement, addressed to "Global Realty Ventures, Attn:  Abraham Klein, 1260 57th Street, Brooklyn, NY 11219."  The first invoice reflects fees in the amount of $10,573.50 for 36.7 hours of services rendered through November 30, 2008.

20140132v8

After Troutman emailed its Engagement Letter, Troutman had to repeatedly request that Klein execute the Engagement Letter before it was actually executed and returned on December 29, 2008. (R. 59 at 1364-1371; R. 23 at 407-408, ¶ I.A.36.)  The record reflects written requests by Troutman on December 9, 2008, December 12, 2008, December 19, 2008 and December 24, 2008. (R. 23 at 406-407, ¶¶ I.A.26, 30-32.)  Ironically, on December 31, 2008, just two days after the signed Engagement Letter was returned to Troutman, Mr. Wang reported to Klein:  "I called Mr. Zhang early this afternoon but he did not answer the phone, so I called Ms. Wang. Ms. Wang told me that they are basically fine with the LOI, but Mr. Zhang want to hold up this deal for another two or three months due to the current economic downturn.  We agreed to pass this information along to you. ¶ Please let us know if you need us to do anything." (R. 23 at 409, ¶ I.A.38.)

On January 16, 2009, Troutman emailed a second invoice to "Global Realty Ventures, Attn:  Abraham Klein, 1260 57th Street, Brooklyn, NY 11219."  The second invoice was in the amount of $6,368.30 for 22.5 hours of services rendered through December 31, 2008. (R. 23 at 409, ¶ I.A.39.)  It is undisputed that the invoice for December 2008 was the last invoice issued by Troutman for the China Project engagement.

It is also undisputed that the China Project has been dormant since the end of December 2008, when the developer advised Mr. Wang that the project was put on hold.  On cross-examination, Klein admitted that the developer of the China Project put the project on hold as of December 31, 2008 (R. 36 at 964, Tr. 11/14/11 37) and that the project has been dormant since that date (R. 36 at 965, Tr. 11/14/11 38).   Klein also admitted that he has not had any involvement with the China Project or any other potential real estate investment in China since that time.  (R. 36 at 968, Tr. 11/14/11 41.)

20140132v8

It is further undisputed that Troutman has not rendered any legal services for GRV and/or Klein since at least early 2009 and that Troutman has not been contacted by GRV or the Kleins since early in 2009.  (R. 23 at 409, ¶¶ I.A.39-41.)  In addition, it is undisputed that, in accordance with Troutman's customary practices, Troutman closed its file on the China Project engagement after it had been inactive for one year.  (R. 61 at 1623.)  Based upon the foregoing undisputed facts, the Bankruptcy Court correctly found that: "Accordingly, based on the entire record, the Court concludes that GRV was not a current client of Troutman at the time that the Trustee sought to retain the firm."  (R. 61 at 1624.)

## ARGUMENT

### POINT I

### THE BANKRUPTCY COURT DID NOT ERR IN ITS MEMORANDUM DECISION AS KLEIN FAILED TO MEET HIS HEAVY BURDEN TO PROVE CAUSE FOR DISQUALIFICATION OF TROUTMAN

#### A.    Klein misrepresents and misapplies the standard for disqualification

The law is clear in this Circuit that: "[a] party's choice of counsel is entitled to great deference," and "[d]isqualification motions are viewed with disfavor because they interfere with a party's right to employ the counsel of its choice." Exco Resources, Inc.,  2003 U.S. Dist. LEXIS 1442 at *12; see (R. 61 at 1616) ("This relief is rare, because disqualification interferes with the attorney-client relationship and is at odds with a client's right to select counsel of his or her own choosing.").  As the Bankruptcy Court stated, "New York's professional conduct rules provide a framework to assess questions of conflicts of interest for bankruptcy courts sitting in this jurisdiction.  At the same time, the Second Circuit has noted that while state disciplinary codes provide valuable guidance, a violation of those rules may not warrant disqualification, which is disfavored unless an attorney's conduct tends to taint the underlying trial."  (R. 61 at 1617) (internal citations omitted).  Hence, courts in this Circuit applying New York law use a

three-part test when addressing a former client's motion seeking to disqualify opposing counsel. The movant must show:

(1)   the moving party is a former client of the adverse party's counsel;

(2)   there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

(3)   the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

(R. 61 at 1618); Hempstead Video, Inc., 409 F.3d at 133 (quoting Evans, 715 F.2d at 791).

As stated by the Bankruptcy Court, "[t]he party seeking the attorney's disqualification bears the burden of satisfying each part of this test." (emphasis added). Id. As set forth in the Memorandum Decision, and as further articulated herein, Klein has failed to meet his burden.

Not surprisingly, Klein misrepresents and misapplies the standard in the Second Circuit for disqualification of counsel and cites to inapposite case law to support a specious argument that the burden shifted to Troutman to disprove the elements needed for disqualification once Klein made his conclusory, unsupported "roadmap" allegation, which the Bankruptcy Court found to be incredible. According to Klein, his "roadmap" testimony was sufficient to raise a doubt as to whether Troutman should be disqualified, and any doubt has to be resolved in favor of disqualification, therefore the burden of proof shifted to Troutman and Klein did not have to present any other facts or evidence to disqualify Troutman as counsel. Appellant's Brief at 14-16. Klein's recitation of the law is shameful.

Klein first cites to Hull v. Celanese Corp., 513 F.2d 568 (2d Cir. 1975). In that case there was ample evidence of a prior engagement that was substantially related to the current one ("[H]ere the matter at issue in not merely 'substantially related' to the previous representation, rather, it is exactly the same representation." Id. at 570), and the Second Circuit gave no indication that the moving party was relieved of his burden of proof or could have been so

- 16 -

relieved.   Klein's second citation, to <u>Correspondence Services Corp. v. J.V.W. Investment Ltd.</u>, 2000 WL 1174980, *10 (S.D.N.Y. 2000) is even further off the mark.   In that case, the District Court found that the movant had produced some evidence in favor of disqualification, but the Court specifically recited the established law that the movant bears a heavy burden on a disqualification motion and found that the movant had failed to meet his burden.   Indeed, directly contrary to Klein's position, the District Court specifically ruled:   "More significantly, because Kelleher bears the burden of proof on this motion to disqualify, merely establishing a material issue of fact sufficient to defeat summary judgment on the beneficial interest claim is insufficient to support a finding on this motion that Kelleher was represented as an individual by Shaw Pittman." <u>Id</u>. at *13.   The third case cited by Klein, <u>Pastor v. Trans World Airlines, Inc.</u>, 951 F. Supp. 27 (E.D.N.Y. 1996) is equally damaging to Klein's position.   In <u>Pastor</u>, the District Court recognized the need for a high standard of proof on a motion for disqualification, since, as in the instant case, "disqualification motions are often filed for tactical reasons," but the Court also noted that "once a probable conflict is demonstrated, a court should resolve any doubts in favor of disqualification."   <u>Id</u>. at 31.   Neither the facts of <u>Pastor</u>, which bear no similarity to the facts of the instant appeal, nor the holding, suggest in any way the disqualification can be ordered based upon the movant's conclusory statement that he provided confidential information to counsel three years earlier in connection with a prior unrelated matter.[5]

---

[5] At page 16 of Appellant's Brief, Klein also cites to <u>Government of India v. Cook Industries, Inc.</u>, 569 F.2d 737 (2nd Cir. 1978) for the proposition that the burden shifted to Troutman once Klein made his "roadmap" speech.   The issue discussed in <u>Government of India</u> is whether the respondent on a motion to disqualify is irrebuttably presumed to have had access to confidential information if a former representation is proven to be substantially related. (The concurring opinion to which Klein cites indicates that the presumption is rebuttable.)   Contrary to Klein's use of the case, there is no discussion in the opinion suggesting that the burden of proof shifts to the respondent on all issues once the movant provides any evidence at all in support of disqualification.

**B.**      **Klein has failed to demonstrate that the terminated China Project and Troutman's current engagement by the Trustee are "substantially related" or that Troutman had access to relevant confidential information**

Based upon the undisputed facts set forth above, the Bankruptcy Court correctly found that:  "Accordingly, based on the entire record, the Court concludes that GRV was not a current client of Troutman at the time that the Trustee sought to retain the firm."  Id. at 24.   In Appellant's Brief, Klein does not dispute the Bankruptcy Court's ruling that GRV was "not a current client" of Troutman at the time of its engagement by the Trustee.  Klein does argue that he was an "actual client" of Troutman for purposes of the China Project engagement, rather than a "prospective client" as the Bankruptcy Court concluded (R. 61 at 1621), but even Klein refers to himself as a "former client" of Troutman (Appellant's Brief at 24-25), thereby conceding that the China Project engagement was terminated long before the Trustee sought to retain Troutman.[6]

Even Appellant Klein, a man who apparently knows no shame, has never asserted that the subject matter of the short-lived and quickly abandoned China Project engagement is related in any manner to the Persaud Chapter 7 Case or to any claims that the Trustee may investigate or assert against Klein.  Obviously, an aborted real estate project in China, as to which the Persaud estate claims no interest, is not "substantially related" to the administration of the Persaud Estate.

The "substantially related" element is applied strictly by courts in the Second Circuit, "requiring the moving party to demonstrate that the relationship between the two actions is

---

[6] Although Appellant's Brief devotes an entire Point III(A) (pp. 19-21) to a discussion of whether Klein was an actual or a prospective client, the issue is of no significance for this appeal.  It is immaterial whether Klein could be deemed to have been an actual client of Troutman or a prospective client in light of the Bankruptcy Court's unassailable rulings that:  (a)  the China Project engagement was terminated prior to Troutman's retention by the Trustee, making GRV or Klein "former clients" rather than "current clients" of Troutman (R. 61 at 1624); and (b) that Klein failed to demonstrate either that there is a "substantial relationship" between the China Project engagement and Troutman's current engagement by the Trustee, or that confidential information useful to the Trustee in the Chapter 7 case was provided to Troutman in connection with the China Project engagement (R. 61 at 1624-1627).  Given those findings, whether Klein was an actual or prospective client, there is no conceivable cause to disqualify Troutman from representing the Trustee.

- 18 -

'patently clear,' or that the actions are 'identical' or 'essentially the same.'" <u>Bennett Silvershein</u>
<u>Assoc.</u>, 776 F. Supp. at 803 (<u>quoting</u> <u>Gov't of India</u>, 569 F.2d at 740); <u>see</u> (R. 61 at 1617).  As
noted by the Bankruptcy Court, "Courts in this Circuit presume 'that during the course of the
former representation confidences were disclosed to the attorney bearing on the subject matter of
the representation.'"  (R. 61 at 1617) (<u>quoting</u> <u>T. C. Theatre Corp. v. Warner Bros. Pictures, Inc.</u>,
113 F. Supp. 265, 268 (S.D.N.Y. 1953)).  "The party objecting to an attorney's retention has the
"burden of showing how this information [is] relevant to the present action." (R. 61 at 1617)
(<u>quoting</u> <u>Petroquimica de Venezuela, S.A. v. M/T Trade Resolve (In re Maritima Aragua, S.A.)</u>,
847 F. Supp. 1177, 1182 (S.D.N.Y. 1994).

     Moreover, the <u>Bennett Silvershein</u> court described "substantially related" subject matter
as follows:

> [Subject matter] should be considered sufficiently related to a later case to warrant
> disqualification only to the degree that the information the client disclosed in that earlier
> consultation is useful in the later case. Information can be useful even if the two matters
> are not identical. However, the attorney must gain some advantage not otherwise
> available but for the prior confidential relationship, even if that advantage goes only to
> background matters. <u>Bennett Silvershein Assocs.</u>, 776 F. Supp. at 804.

     In order to create as much havoc for the Trustee as possible, Klein tries to create the
illusion of a "substantial relationship" between the China Project engagement and Troutman's
work for the Trustee by asserting over and over again, in conclusory statements with no
documentary or other support, that during the calls with Troutman in the very early days of the
China Project engagement, the Kleins provided Troutman with confidential information
concerning Klein's ownership interest in Caring that will be useful to the Trustee in pursuing
claims to an interest in Caring on behalf of the Persuad estate.  Klein's position boils down to the
oft-repeated testimony of Klein that he provided Troutman with "a roadmap to everything about

- 19 -

my finances specifically related to Caring" which the Trustee might be able to use to "take away my rights . . . in Caring."  (R. 36 at 955, Tr. 11/11/14 28:1-5.)

Significantly, the Bankruptcy Court focused on Klein's testimony as aforesaid and found it to lack credibility.  As the Bankruptcy Court stated:

> Nor has Mr. Klein shown that "information . . . disclosed in that earlier consultation is useful in the later case." *Bennett Silvershein Asocs*., 776 F. Supp. at 804.  While he aims to paint the picture through his testimony and argument, Mr. Klein's statement that he provided Troutman with a "roadmap to everything about my finances specifically related to Caring" lacks credibility and is at odds with substantial and persuasive evidence to the contrary.  This evidence includes contemporaneous e-mails, documents, and testimony. 11/14/11 Tr. 28:1-2. (R. 61 at 1627.)

The Bankruptcy Court's conclusion is admirably restrained.  The Bankruptcy Court could have said with equal justification that Klein's objection to Troutman's retention was based solely upon deliberate fabrications.

During cross-examination, in direct conflict with his oft-quoted "roadmap" speech, Klein admitted that he **never provided** to Troutman any personal balance sheets, income statements, tax returns, bank statements, brokerage statements or credit card statements (R. 36 at 955, Tr. 11/14/11 28:11-23), and he further admitted that he **never provided** Troutman with any balance sheet, income statements or other financial statements for Caring; and tax returns, accounting records or contracts for Caring; any list of transfers made by Caring to any other party or documentation of such transfers; copies of any proposed contracts between Caring and any other party; specifically any proposed factoring agreement with Caring; or **any documentation of ownership of Caring** (R. 36 at 955-957, Tr. 11/14/11 28:24-30:2).  In addition, Klein admitted that he never asked Troutman to review any draft contracts between Caring and any other party or to communicate with anyone on behalf of Caring (R. 36 at 959, Tr.  11/14/11 32:1-7); that he was not aware of any email communication with Troutman that mentions Caring (R. 36 at 960,

- 20 -

20140132v8

Tr. 11/14/11 33:18-21) or any email communication with Troutman that refers to Persaud (R. 36 at 961, Tr. 11/14/11 34:9-11); and that Troutman's Engagement Letter for the China Project engagement does not mention Caring (R. 36 at 961, Tr.  11/14/11 34:12-18).  And later, the Bankruptcy Court asked Klein whether he could identify any document among over 120 exhibits presented by Klein that "includes the precise information, your phrase, that you provided to Troutman Sanders in connection with the China project that was of this financial and confidential nature" (R. 36 at 983-984, Tr. 11/14/11 56:13-57:11) to which Klein responded, "It's not in the documents."  (R. 36 at 984, Tr. 11/14/11 57:12.)

As further support for his "substantial relationship" allegation, Klein repeatedly references certain allegations adverse to Klein made by Persaud to reporters.  In the Klein Supplemental Affidavit (R. 59 at 1408-1430, ¶¶ 44-49), Klein contends that there is a connection between the China Project and Caring in that Klein approached Persaud in or around October, 2008 with a proposal for a factoring agreement between Caring and GRV which Klein would use to raise funds for GRV's investment in China.  According to Klein, this proposed transaction, which Persaud rejected, led to bad blood between Klein and Persaud and negative statements made by Persaud to reporters.  Klein therefore concludes that "It is clear to me that GRV and Caring are inter-related matters both from the perspective of the Debtor and by virtue of the fact that there was a contemplated deal between both entities."  Id. at ¶ 49.  Klein further contends that there is a connection between the China Project and the Persaud bankruptcy case in that Persaud has accused Klein of causing Caring to make improper transfers to one of Klein's companies, Trade Fame Group Ltd. ("Trade Fame Group"), and Trade Fame Group, according to Klein, "is an offshore entity related to my dealings in China."  Id. at ¶ 51.

There is a gaping hole in Klein's attempt to construct a "substantial relationship" between the China Project engagement and Troutman's engagement by the Trustee.  Klein admitted on cross-examination that he did not ask Troutman to render any services with respect to, and Troutman had absolutely no involvement with, either (a) the proposed factoring agreement between Caring and GRV or (b) any transfers, proper or improper, from GRV to Trade Fame Group, nor was Troutman given any information (confidential or otherwise) concerning either of those two matters.

With regard to the proposed factoring agreement between Caring and GRV, Klein admitted that he never provided a copy of the proposed agreement to Troutman and never asked Troutman to review any draft contracts between Caring and any other party (R. 36 at 956, 959, Tr. 11/14/11 29:22-24, 32:1-3); he never asked Troutman to communicate with Caring's attorney with regard to the proposed factoring agreement (R. 36 at 959-960, Tr. 11/14/11 32:25-33:2). On the contrary, he admitted that he was represented in the matter by other attorneys who drafted the proposed agreement (R. 36 at 960, Tr. 11/14/11 33:3-17), and he further admitted that Troutman's Engagement Letter made no reference to providing services relating to obtaining financing for the China Project (R. 36 at 962, Tr. 11/14/11 35:3-7).

Similarly, with regard to Persaud's accusations that Klein caused Caring to make improper transfers to Trade Fame Group, Klein admitted that he never provided Troutman with any balance sheet, income statement or other financial records, tax returns, bank statements, brokerage statements, credit card statements or accounting records of Trade Fame Group, nor did he provide Troutman with any lists or documentation of any transfers made by Trade Fame Group to any other party or copies of proposed contracts between Trade Fame Group and any other party.  (R. 36 at 957-958, Tr. 11/14/11 30:3-31:3.)

Given the foregoing admissions, Klein has obviously and deliberately misrepresented facts to deceive the Bankruptcy Court into believing that there was a "substantial relationship" between the China Project engagement that was over and done with in December 2008 and Troutman's engagement by the Trustee three years later.  Significantly, in the original Klein Affidavit (R. 59 at 1372-1407), Klein went so far as to state that the proposed factoring agreement between GRV and Caring, and the allegations made by Persaud concerning improper transfers made by Caring were the "very same matters for which I have retained them to represent me." (R. 7 at 62, ¶ 11.c.)  The objective facts, admitted by Klein on cross-examination as indicated above, belie any such implication and demonstrate the deplorable lengths to which Klein has gone to make the Trustee's investigation and pursuit of claims against Klein as time consuming and expensive as possible.  It is obvious from the record on appeal that the Bankruptcy Court correctly concluded that Klein has not established that a relationship exists between the China Project engagement and the Troutman retention that is patently clear or that the actions are identical, nor has Klein shown that the unidentifiable information he purportedly disclosed in the China Projection engagement is useful to the Trustee in the Chapter 7 Case.

## POINT II

### THE BANKRUPTCY COURT DID NOT ERR IN OVERRULING KLEIN'S OBJECTION TO THE RETENTION OF TROUTMAN AS TROUTMAN COMPLIED WITH THE REQUIREMENTS OF BANKRUPTCY RULE 2014

In addition to the foregoing, Appellant maintains that Troutman should be precluded from representing the Trustee because Campo's first Bankruptcy Rule 2014 Declaration did not comply with Bankruptcy Rule 2014.  In yet another instance of Klein intentionally twisting the facts, Appellant selectively cites language from the Memorandum Decision stating that "Here, as the record reflects, Mr. Campo's first Bankruptcy Rule 2014 declaration does not disclose Troutman's prior representation of GRV or prospective representation of Mr. Klein."  (R. 61 at

20140132v8

1629; Appellant Brief at 9.)  However, the Memorandum Decision expressly goes on to state that

"At the same time, the record also reflects that when these matters were brought to the Trustee's

attention, the Trustee promptly filed a supplemental Bankruptcy Rule 2014 declaration of Mr.

Campo that set forth that information."  (R. 61 at 1629.)

In the Klein Objection, Klein states (R. 7 at 46, ¶¶ 15-17) that his counsel, Mendel

Zilberg ("Zilberg"), had a call with Campo on August 1, 2011 during which Zilberg

"advised Mr. Campo of a potential conflict between Creditor Klein and Troutman."  With respect

to Campo's conversation with Zilberg on August 1, 2011, Campo stated in the Campo

Affirmation in Response:

> 3.      By way of background, in a telephone conversation on August 1, 2011 with
> Klein's attorney, Mendel Zilberg ("Zilberg"), regarding the Trustee's request for
> certain financial information and access to Caring Home Care Agency ("Caring"),
> Zilberg raised an issue regarding a potential conflict.  Specifically, Zilberg told me
> that Troutman "may" have a conflict in the case because Klein thought Troutman may be
> representing him in an unrelated matter.  I advised Zilberg that I had run Klein's name
> in the Troutman conflict and client database, and had found no conflicts or
> representations.  I asked Zilberg whether he was referring to an ongoing or prior
> matter, and Zilberg replied that he "did not know", but that his client "thought it may
> be ongoing."  I told Zilberg that I would go back and check our database again to
> make sure that we did not have any ongoing representation of Klein.  I also suggested
> that Zilberg confirm with Klein whether or not the matter was ongoing.  Finally, I
> advised Zilberg that if the representation he was referring to wasn't an ongoing matter,
> then there wouldn't be any conflict, and Zilberg agreed with me on this point.
>
> 4.      I then contacted Troutman's conflict department again and requested that they re-
> run Klein's name in the firm's database, including both open and closed matters.  The
> database did not reflect any representation of Klein, either past or present.  The database
> did pick up a prior closed representation of Global Realty, and listed Klein as a
> director/officer of that entity.  I made further inquiry in Troutman and confirmed that the
> matter was closed.  I advised the Trustee of my conversation with Zilberg and the
> results of the updated conflicts search, and we both concluded, for the reasons set forth
> below, that there was no conflict. (R. 10 at 102-103, ¶¶ 3-4.)

Although the Trustee and Campo determined that a conflict did not exist, Campo

nevertheless supplemented his initial Bankruptcy Rule 2014 declaration with the Supplemental

- 24 -

2014 Declaration and disclosed Troutman's prior concluded representation of GRV which the Bankruptcy Court found to be prompt and proper.  (R. 9 at 100, ¶¶ 5-7.)  Accordingly, based on the foregoing and the entire record, the Bankruptcy Court concluded that "taken as a whole, the disclosures made by the Trustee and Troutman are sufficient to satisfy the requirements established by Bankruptcy Rule 2014."  (R. 61 at 1629.)  The Bankruptcy Court also found "that the timing and circumstances of these disclosures do not provide a basis to dislodge the Trustee's choice of counsel or to invoke the harsh remedy of disqualification."  (R. 61 at 1629.)  As set forth above, the District Court is required to give great deference to the Bankruptcy Court's factual findings unless such findings are clearly erroneous.  Klein has provided no justification for this Court to conclude that the Bankruptcy Court's determination was clearly erroneous and should be overturned, thereby depriving the Trustee of his chosen counsel.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully submits that the Order of the Bankruptcy Court should be in all respects affirmed.

Dated:  New York, New York                                      **TROUTMAN SANDERS LLP**
       October 2, 2012

                                              By:   *s/Lee W. Stremba*
                                               John P. Campo
                                               Lee W. Stremba
                                               Brett D. Goodman
                                               The Chrysler Building
                                             405 Lexington Avenue
                                             New York, New York 10174
                                             Tel.: (212) 704-6200
                                             Fax: (212) 704-5966

                                             *Attorneys for Appellee John S.*
                                             *Pereira, Chapter 7 Trustee for Estate*
                                             *of Christine Persaud*