UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
In Re:                                                     x     Case No. 12-03337 (cv)
    CHRISTINE PERSAUD,                  x
                                                           x     U.S. Bankruptcy Court
        Debtor.     x     Case No. 10-44815-ess
---------------------------------------------------------- x

## APPELLANT'S REPLY TO APPELLEE'S BRIEF

Abraham Klein ("Appellant Klein"), the Appellant in the instant matter, respectfully submits this reply to Appellee, John S. Pereira, Esq., the Chapter 7 Trustee's ("Trustee") brief[1].

## PRELIMINARY STATEMENT

The Trustee and Troutman Sanders LLP ("Troutman") seek to shift this Court's attention from the lack of candor in their Bankruptcy Rule 2014 disclosures to the Bankruptcy Court regarding conflict of interest issues. The Trustee and Troutman had been less than candid with the Bankruptcy Court, and for that reason alone, Troutman should be disqualified as attorney for the Trustee.

Furthermore, Appellant Klein satisfied each of the three required elements for disqualification of counsel, which the Trustee failed to rebut. Therefore, the Bankruptcy Court committed reversible an error by denying Appellant Klein's request that Troutman be disqualified as Trustee's counsel.

## STANDARD OF REVIEW

Pursuant to Bankruptcy Rule 8013, a District Court reviews a bankruptcy court's conclusions of law *de novo* and reviews findings of fact for clear error. *See, In re Miner*, 229 B.R. 561, 564-565 (2d Cir. BAP 1999), and *In re Cavalry Const., Inc.*, 428 B.R. 25, 29 (S.D.N.Y. 2010). Mixed questions of fact and law are subject to *de novo* review. *In re Vebeliunas*, 332 F.3d 85 (2d Cir. 2003). As the Bankruptcy Court's analysis, in its Decision, involved addressing a mixture of law and fact, a *de novo* standard is appropriate here.

---

[1] The Trustee's Brief is replete with *ad hominem* attacks, which are inappropriate, unprofessional, and Appellant Klein denies each of them. Furthermore, it appears that Trustee's counsel is hopeful that by engaging in such conduct, he can divert attention away from the unanswered questions regarding Troutman's retention.

*Arguendo*, if this Court determines that this appeal is subject to a standard of clear error, a finding of fact is clearly erroneous, within the meaning of Bankruptcy Rule 8013, when although there is evidence to support it, the reviewing court, on the entire record, is left with the definite and firm conviction that a mistake has been committed.  *In re JLM, Inc.,* 210 B.R. 19, 23 (2d Cir. B.A.P. 1997).   Even under this standard, the Bankruptcy Court's decision should be overturned.

## ARGUMENT

### POINT I

**TROUTMAN'S FAILURE TO DISCLOSE ITS REPRESENTATION OF APPELLANT KLEIN IN ITS INITIAL DISCLOSURE PURSUANT BANKRUPTCY RULE 2014 SHOULD HAVE RESULTED IN ITS DISQUALIFICATION AS TRUSTEE'S COUNSEL**

In July 2011, the Trustee approached Troutman to retain the firm.  (Tr. of Hrg. on 9/15/11; pg. 31).  Shortly thereafter, John Campo, Esq., a partner at Troutman, requested an internal conflict check, in which, according to Mr. Campo, no reference to Appellant Klein or GRV was found[2].  *Id*.  On August 1, 2011, Appellant Klein's counsel, Mendel Zilberberg, Esq., held a telephone conference with Mr. Campo about a potential conflict of interest in Troutman's representation of the Trustee against Appellant Klein (Doc. No. 191).  As a result of the conversation, Mr. Campo, once again, on August 1, 2011, requested a second conflict check.  *Id*.  This second conflict check found Appellant Klein listed as a director/officer of an entity named "GRV" that was listed in Troutman's database as a former client.  (Doc. 258).

On August 10, 2011 (after the second conflict check was completed), the Trustee filed an application to retain Troutman.  The application consisted of a declaration of Mr. Campo, dated August 9, 2011, purportedly in accordance with Federal Rule of Bankruptcy Procedure 2014.  However, Mr. Campo, in his declaration, did not even mention Appellant Klein or GRV – despite the second conflict check in which Appellant Klein's name was found in relation to GRV.

On August 15, 2011, Appellant Klein filed an affirmation in opposition to the Trustee's Application to Retain Troutman, in which a conflict of interest was noted.  In response, Mr. Campo filed a supplemental declaration dated August 19, 2011, in which Mr. Campo acknowledged that he was notified of a potential conflict by Mr. Zilberberg, that a second conflict check was then performed, and that Troutman's "database did pick up a prior closed representation of Global Realty, and listed Klein as a

---

[2] Notably, no documents were produced by Troutman showing their initial conflict check.

director/officer of that entity". (Doc. No. 190). However, Mr. Campo chose not to disclose Troutman's conflicts search results in the initial declaration of August 9, 2011. Clearly it was not candor, but lack of choice, which led Mr. Campo to file the supplemental declaration. At the hearing, Mr. Campo testified that he was unaware if the first conflict check searched for both open and closed matters, but he specifically asked that the second search include closed matters[3]. (Tr. of Hrg. on 9/15/11; pg. 61).

    The Bankruptcy Court, in its 30 page decision, granting the Trustee's application to retain Troutman devotes hardly more than one page in its analysis and reference to Rule 2014, while referencing Bankruptcy Code 327 and "adverse interest" in great detail. This, despite the accepted view that, "the requirements of Fed. R. Bankr. P. 2014 are more-encompassing than those governing the disinterestedness inquiry under section 327 [of the Bankruptcy Code]. For while retention under section 327 is only limited by interests that are 'materially adverse,' under Rule 2014, 'all connections' that are not so remote as to be *de minimus* must be disclosed." *In re Leslie Fay Co., Inc.* 175 B.R. 525, 536 (Bankr. S.D.N.Y 1995) (quoting *In re Rusty Jones, Inc.,* 134 B.R. 321, 345 (Bankr. N.D. Ill (1991) (Emphasis in text). It has been held that professionals do not have any discretion whether to disclose a connection as Rule 2014, as all connections must be disclosed. *See, In re Matco Electronics Group, Inc.,* 383 B.R. 848, 853 (Bktrcy.N.D.N.Y., 2008). Application of Rule 2014 is not limited by negligent or inadvertent failures to disclose connections and the requirements of Rule 2014 constitute mandates with which professionals must comply, not invitations to comply. *See, In re Park-Helena Corp.,* 63 F.3d 877, 881 (9th Cir. 1995). Moreover, "...No matter how old the connection, no matter how trivial it appears, the professional seeking employment must disclose it." *In re EWC, Inc.,* 138 B.R. 276, 280-281 (Bankr. W.D Okla. 1992). It is clear that it was Troutman's burden to adequately make the disclosures mandated by Rule 2014. *See*, Tr. of Hrg. on 9/15/11; pg. 45, *In re Persaud,* 467 B.R. 26, 43 (Bankr. E.D.N.Y. 2012); *In re Enron Corp.,* 2002WL 32034346 at *5 (Bankr. S.D.N.Y 2002). However, Troutman failed to do so.

    Mr. Campo filed his declaration in support of the retention, alleging that neither he nor his firm had any conflicts to disclose to the Court, despite Mr. Campo's being in possession of a conflict search

---

[3] It is disconcerting that Mr. Campo, a partner in Troutman, a firm which boasts on its website that it has 600 attorneys, 40 practice fields, and numerous offices in the U.S. and China, was unable to state whether his firm's conflict department, when asked by him to complete a search, searched closed matters – an obvious area for conflict inquiry.

which referenced Appellant Klein and GRV. When the Bankruptcy Court found that "After Mr. Klein objected to Troutman's retention, Mr. Campo submitted a supplemental declaration pursuant to Bankruptcy Rule 2014", in which he disclosed Appellant Klein and GRV, the Court clearly erred when it then boldly concluded that "the disclosures made by the Trustee are sufficient to satisfy the requirements established by Bankruptcy Rule 2014." *In re Persaud,* 467 B.R. 26; 32, 44 (Bankr. E.D.N.Y. 2012). Accordingly, as the strict requirements of disclosure under Rule 2014 were not respected by Troutman, the order below should be reversed.

### POINT II

### APPELLANT KLEIN MADE A SHOWING THAT TROUTMAN'S DISQUALIFICATION AS COUNSEL FOR THE TRUSTEE WAS WARRANTED

The courts have held that an attorney may be disqualified if: (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client. *Evans v. Artek Sys. Corp.,* 715 F.2d 788 (2d Cir. 1983).

**A.     Appellant Klein, individually, was a client of Troutman.**

It is undisputed that Ms. Cassirer spoke with Appellant Klein, exchanged information, and advised Appellant Klein that all information provided to her was "confidential", because she was his "attorney". On August 30, 2008, as the Managing Partner of Troutman's New York office, she had the following email exchange with Appellant Klein's brother, Hershel Klein:

> Mr. Klein wrote: "I will be emailing you the info. Is it necessary to do a confidentiality agreement before I sent the info to you? We are very conscious about keeping this project confidential."
>
> Ms. Cassirer, on behalf of Troutman, then assured Mr. Klein that, "*I do not believe that you need a confidentiality agreement with your attorney since we are bound to keep your communications with us confidential.*" (emphasis added) (Doc. No. 420-3).

This correspondence alone is sufficient to establish an attorney-client relationship with Appellant Klein[4].

---

[4] The Trustee, in his Appellee Brief, and the Bankruptcy Court, in its Memorandum Decision, failed to account for Troutman's clear and unambiguous statements that Troutman was Appellant Klein's attorneys and that they undertook to keep communications confidential.

4

*See e.g., Interpetrol Bermuda, Ltd. v. Rosenwasser,* 1988 WL 140801, at * 2 (S.D.N.Y. Dec. 20, 1988)("[Even] If during pre-retention consultations confidences are divulged with an expectation that they remain secret, the attorney client relationship is implicated."), and *Moran v. Hurst,* 32 A.D.3d 909, 911, 822 N.Y.S.2d 564, 566 (2d Dep't 2006)(Since an attorney-client relationship does not depend on the existence of a formal agreement or payment of a fee, a court must look to the words and actions of the parties to ascertain the existence of such a relationship).

Furthermore, it is undisputed that Appellant Klein disclosed confidential information to Troutman in August 2008 well in advance of November 2008 when Appellant Klein disclosed that GRV would be the entity that would complete the China deal. It therefore follows that Appellant Klein was a client, individually, as he first communicated and provided confidential information to Troutman prior to even disclosing GRV's existence.

The Bankruptcy Court and the Trustee fail to address how once a general contour of representation is established (as evidenced by the e-mails cited *supra*), a resultant obligation and duty of confidentiality can then be retroactively negated by Troutman.

**B.    There is a substantial relationship between Troutman's representation of Appellant Klein in the China Project and the instant action.**

Ms. Cassirer testified as to Klein's telephone inquiry for potential representation, that she gets "a lot of crackpot phone calls", that Appellant Klein and/or Hershel Klein contacted her after seeing a billboard by Troutman, and that it was important when screening clients to determine whether they have the financial capacity to pay the firm. (Tr. of Hrg. on 9/15/11; pgs. 111-113). It follows that, as an initial matter, Appellant Klein's personal finances were discussed. In subsequent teleconferences, in the course of discussing with Troutman financing the China Project, Appellant Klein provided confidential information regarding Caring, as funds for the project were to come from the business. (Tr. of Hrg. on 9/20/11; pgs. 44, 56-57). Caring is a business at issue in the bankruptcy action, and related adversary proceedings against Appellant Klein[5]. In the instant action, Troutman is in a position to use the confidential information regarding Caring provided to Troutman in furtherance of the prior representation. Accordingly, a direct relationship exists between Troutman's representation of Appellant Klein in the

---

[5] Appellant Klein respectfully asks this Court to take notice of the fact that the Trustee, through his counsel Troutman, has initiated an Adversary Proceeding action against Appellant Klein claiming, *inter alia*, preference, conversion, and unjust enrichment relating to the entity Caring Home Care.

5

China Project – a deal which would be funded by Appellant Klein based in part on his ownership of Caring– and the instant action, which involves claims against Appellant Klein regarding his ownership of Caring[6]. Appellant Klein testified that, "I gave [Troutman] a roadmap to everything about my finances specifically related to Caring."  (Tr. of Hrg. on 11/14/11; pg 28) (Doc. No. 302).  Troutman should not be allowed to be in a position to use information obtained under Troutman's promise of confidentiality against Appellant Klein.

Subject matter is sufficiently related to a later case to warrant disqualification of counsel where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation.  In *Bennett Silvershein Assoc. v. Furman*, 776 F.Supp.800, 804 (S.D.N.Y. 1991) the court held that a prior consultation between a lawyer and former client is sufficiently related to the current case to justify disqualification of the attorney if "information the client disclosed in [the] earlier consultation is useful in the later case," that is, if it provides "some advantage not otherwise available ... even if that advantage goes only to background matters".  Furthermore, "Usefulness can be ascertained by comparing the information alleged to have been imparted in the prior representation with the allegations in the current dispute".  Confidential information provided to Mr. Epstein regarding Appellant Klein's interest in Caring, in relation to the China Project, would unjustly judicially permit Troutman to use this information in the instant action involving claims by the Trustee disputing Appellant Klein's ownership of Caring. Accordingly, Appellant Klein showed the substantial relationship between the China Project and Troutman's representation of the Trustee in the instant case, and related cases.

**C.      Troutman had access to and/or received confidential information.**

Appellant Klein provided confidential information to Troutman regarding his interest in Caring, and Troutman assured him that information provided to them was confidential. (Doc. No. 420-3). Furthermore, an attorney's conflicts are ordinarily imputed to his firm based on the presumption that "associated" attorneys share client confidences. *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 -133 (2d Cir. 2005), and *U.S. v. DiTommaso*, 817 F.2d 201, 219 (2d Cir. 1987).

---

[6] The Bankruptcy Court, in its Memorandum Decision, stated that Appellant Klein did not object to an order authorizing the Trustee to retain Troutman as general and bankruptcy counsel except as to claims against Appellant Klein and GRV; however, the record reflects that Appellant Klein's counsel asked the Court that an exception to the representation be carved out regarding claims against Appellant Klein relating to Caring, as Appellant Klein's counsel was clear that Appellant Klein included Caring. (Tr. of Hrg. on 9/22/11; pg 8-9).

Therefore, the entire Troutman firm should be disqualified from representing the trustee.

Additionally, inasmuch as Appellant Klein set forth that Troutman represented him in a "substantially related" matter, even absent Appellant Klein's direct testimony, a presumption arises that during the prior representation he disclosed confidential matters to Troutman that are related to the instant action. *See*, *Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* 2006 WL 6846702 at *2 (E.D.N.Y. 2006)*, Cheng v. GAF Corp.,* 631 F.2d at 1055 (2d Cir. 1980). However, no evidence was submitted by any person with actual knowledge to contradict Appellant Klein's testimony or rebut the presumption that Troutman received confidential information regarding Caring, as Troutman never offered testimony, or even an affidavit, of Mr. Epstein, or any of the other attorneys in China, who had personal knowledge of the confidential information disclosed to Troutman which would have shed light on Appellant's Klein's claims.  Moreover, Mr. Campo and Ms. Cassirer testified they never spoke with Mr. Epstein about the information provided to him by Appellant Klein[7]. (Tr. of Hrg. on 9/15/11; pgs. 66-67, 136, 145-146). Accordingly, any reliance by the Bankruptcy Court (*see, In re Persaud*, 467 B.R. at 32) upon Mr. Campo's declaration that after reviewing the available information, "no conflict exists in connection with [Troutman's] proposed retention by the Trustee" is misplaced and an error.  Mr. Campo's declaration, without speaking with Mr. Epstein, is based on information he admits he did not have[8].

## POINT III

**TO THE EXTENT THE BANKRUPTCY COURT DID NOT HAVE SUFFICIENT INFORMATION TO DETERMINE THE SUBSTANTIAL RELATIONSHIP BETWEEN THE CHINA PROJECT AND THE ISSUES IN THIS MATTER, IT WAS BECAUSE THE COURT PROVIDED APPELLANT KLEIN WITH A HOBSON'S CHOICE OF EITHER DISCLOSING CONFIDENTIAL INFORMATION IN OPEN COURT OR RISK A RESULTING DENIAL OF THE REQUEST FOR DISQUALIFICATION**

---

[7] Ms. Cassirer, in an affirmation dated September 7, 2011 in support of retention, stated that Troutman would erect a Chinese Wall between any of its attorneys who worked on the China Project, and its various counsel representing the Trustee in this action.  Thereafter, on September 15, 2011, Ms. Cassirer testified that she did not ask Mr. Epstein, when sending her the firm's case file, to place the file in a lockbox, or to put an electric wall around the computer system, in order to ensure that no other Troutman attorneys viewed the file. *Id*.  Therefore, Appellant Klein's file with Troutman remained open to the firm. Appellant Klein should be protected from disclosure or sharing of his confidential information.
[8] Notably, Mr. Campo stated in his Rule 2014 Supplemental Declaration that "Troutman owes no duty of loyalty to Klein." (Doc. No. 190, at ¶7).  Such a statement made after promising confidentiality is troubling.  Appellant Klein's concern is that Troutman is in a position to use confidential information provided to them.

Appellant Klein set forth that the relationship between the disclosed confidential information during the prior representation and Troutman's current engagement by the Trustee are substantially related. Klein testified that Troutman wanted to know how he would raise the approximately six million dollars in equity for the deal, which led to him disclosing confidential information regarding Caring. (Tr. of Hrg. on 9/20/11; pgs. 56-57). However, assuming, *arguendo*, that Appellant Klein did not make a sufficient showing of the substantial relationship, the reason the showing was not made was because the Bankruptcy Court did not allow Appellant Klein to present evidence, *in camera*, regarding the details of the confidential information relating to Caring that was provided to Troutman.

A. **The Bankruptcy Court refused to allow an *in camera* review of the detailed testimony regarding confidential information provided to Troutman by Appellant Klein.**

The hearings were held in open court despite Appellant Klein's request for a closed hearing (Tr. of Hrg. on 9/15/11; pg. 10). (Doc. No.255). In requesting *in camera* review by the Bankruptcy Court of confidential information, the following statements were made at the hearing:

> MR. KRINSKY [Appellant Klein's counsel]: Your Honor, that's exactly why Courts, both in the eastern district, the southern and the Second Circuit, said where the issue of conflict arises, and the question is one of the confidences and secrets under the former Code, 4101, and the current Code, 1.6. The objective is, is to essentially take the Court up to the point where the information has been revealed. And to the extent that the Court requires additional information, for that information to be provided to the Court ex-camera—or, sorry – in – camera, ex-parte for the purposes of preserving that information.
> THE COURT: How can the process of cross-examination – I think you're referring to case law that arises in the context of document production more often that in the context of testimony at trial.
> […]
> THE COURT: So here's the interesting issue. I'd like to go as far as we can. But I appreciate the difficulty here. And I can tell you, it's hard for me to see that the law will support or the fact-finding process could divide dropping the curtain at the point of confidential information without regard or going into the detail of what it is. I did not raise this when you were questioning the witness. It would not have been appropriate. **You're entitled to make your case and you will succeed or fail. But I don't think you will succeed if your closing argument is my witness said it was confidential and that's enough. I don't think it is. I don't think the law supports that.** (emphasis added). (Tr. of Hrg. on 9/20/11; pgs. 67-68).

Furthermore, at the hearing on November 14, 2011, when the Bankruptcy Court was questioning Appellant Klein, the following statements were made:

> THE COURT: [questioning Appellant Klein] All right. Tell me everything you recall about the phone call.
> MR. KRINSKY [Appellant Klein's counsel]: Your Honor, I'm going to object at this point. Other than the general information, if you were going to ask the witness about specific information that was revealed than I ask, as law, the Second Circuit in this court requires that it be done in camera ex parte.
> THE COURT: I'm not going to take testimony.
> MR. KRINSKY: Otherwise it defeats the very purpose.

8

>        THE COURT:  All right.
>        MR. KRINSKY: He cannot—
>        THE COURT: Well, I will – your counsel's asked me no longer to inquire.  I shall stop at this point.  Your answers have been helpful to me, and I thank you for them. You may proceed.  Do you have any further questions on redirect? (Tr. of Hrg. on 11/14/11; pgs. 59-60) (Doc. No. 302).

**B.    The Bankruptcy Court committed a critical error of law by requesting details of the confidential information in open court and not allowing Appellant Klein to present *in camera* details of the confidential information provided to Troutman, and subsequently determining that there was no substantial relationship between Troutman's representation of Appellant Klein in the China Project as well as making an adverse determination regarding credibility.**

The rules and case law should have guided the Bankruptcy Court to require, or at least allow an *in camera* hearing.  Federal Rules of Bankruptcy Procedure, Rule 9018 clearly states that:

> "On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information..."

Rule 9018 specifically allows the Bankruptcy Court to conduct an *in camera* proceeding involving witness testimony.  *See, In re Global Crossing Ltd*, 295 B.R. 729 (Bankrp. Ct. S.D.N.Y. July 24, 2003)(*In camera* proceedings may encompass hearings held to protect a particular interest).

The Bankruptcy Court's belief that *in camera* review was only for documents is inapposite to Rule 9018, which provides that the Court may make any order required to protected a party, including an order that *in camera* hearing shall be conducted.  Without the Bankruptcy Court conducting an *in camera* hearing regarding specific confidential information provided to Troutman, it could not adequately determine whether the subject matter of Troutman's representation of Appellant Klein in the China Project was substantially related to issues in this matter.  Thus, the Bankruptcy Court erred by refusing to allow Appellant Klein to present, *in camera*, detailed testimonial evidence regarding confidential information provided to Troutman, following a request by Appellant Klein's counsel.

Appellant Klein testified that the confidential information he disclosed was done in the many discussions he had with Troutman and that "It's not in the documents." (Tr. of Hrg. on 11/14/11; pgs. 57).  This testimony of Appellant Klein was not, and could not be rebutted by Troutman, as Mr. Epstein did not testify.  The Bankruptcy Court could not make any adverse credibility determination if Troutman did not rebut Appellant Klein's testimony and it did not allow Appellant Klein to set forth detailed information necessary to make the determination.

9

Appellant Klein was faced with a Hobson's choice, either to divulge the confidential information in open Court before the Trustee and Debtor which would have eviscerated the claim of confidentiality, or to not present the evidence. The Bankruptcy Court imposed this Hobson's choice by stating "*You're entitled to make your case and you will succeed or fail. But I don't think you will succeed if your closing argument is my witness said it was confidential and that's enough. I don't think it is. I don't think the law supports that.*" (Tr. of Hrg. on 9/20/11; pgs. 67-68). (Doc. No.255). It was unreasonable and unfair for the Bankruptcy Court to place Appellant Klein in this predicament, and then to make an adverse credibility determination. The Bankruptcy Court then apparently reasoned that because the documentary evidence did not contain the very confidential information that Appellant Klein freely admitted was disclosed in the numerous discussion he had with Troutman, Appellant Klein's claim was not credible, after having precluded Appellant Klein from presenting the very evidence that the court asked for, and apparently was necessary to make the very determination sought from the court. Although factual findings based on credibility determinations warrant greater deference, a "trial judge may [not] insulate his findings from review by denominating them credibility determinations...." *Anderson v. City of Bessemer*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). Appellant Klein should not be penalized for the impossible situation he was placed.

## CONCLUSION

For the reasons set forth herein and in the Appellant's Brief, Appellant Abraham Klein respectfully requests that the District Court vacate, in its entirety, the Bankruptcy Court's Order dated March 5, 2012.

Dated:  Brooklyn, New York
        October 16, 2012

                                          MENDEL ZILBERBERG & ASSOCIATES, P.C.
                                        *Attorneys for Appellant Abraham Klein*

                              By:    s/ Mendel Zilberberg
                                        Mendel Zilberberg (MZ-6625)
                                        Joel Lewittes (JL-6576), *of counsel*
                                        6619 Thirteenth Avenue
                                        Brooklyn, New York 11219
                                        Telephone (718) 256-2000
                                        E-mail: mz@amalgamail.com