UNITED STATES DISTRICT COURT　　　FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

*In re:*

    CHRISTINE PERSAUD,

        Debtor.

ORDER

12 CV 3337

APPEARANCES

    By:    Mendel Zilberberg
            Samuel Karpel
            Mendel Zilberberg & Associates, PC
            6619 13th Avenue
            Brooklyn, NY 11219
            *Attorney for Appellants*

    By:    Lee W. Stremba
            Brett D. Goodman
            Troutman Sanders LLP
            405 Lexington Avenue
            New York, NY 10017
            *Attorney for Appellees*

JOHN GLEESON, United States District Judge:

        This is an appeal from an Order entered on March 5, 2012 by the United States Bankruptcy Court in this district (Stong, *J.*) authorizing the retention of Troutman Sanders, LLP ("Troutman") as general and bankruptcy counsel for John S. Pereira, the Chapter 7 Trustee for the Estate of Debtor Christine Persaud (hereinafter the "Estate"). Appellant Abraham Klein ("Klein"), who purports to be one of Persaud's creditors in the underlying Bankruptcy, objected to the retention of Troutman on grounds that Troutman represented him in connection with a proposed land deal in China in 2008 and, as a result of this prior engagement, gained access to confidential information that can be used in pursuing claims against him in the Chapter 7 proceeding.

        After full briefing and an evidentiary hearing spanning nine days over several months, Judge Stong issued a Memorandum Decision overruling Klein's objections, approving

Troutman's retention, and denying Klein's motion for reconsideration. *See* Mem. Decision, March 5, 2012, ECF No. 1-61. Klein appeals from this decision.[1] For the reasons that follow, I affirm the Bankruptcy Court in all respects.

A.  *Jurisdiction and Standard of Review*

Appeals from cases originating in the bankruptcy courts are governed by 28 U.S.C. § 158, which vests district courts with appellate jurisdiction over bankruptcy court rulings. While final orders of the bankruptcy court may be appealed to the district court as of right, *see* 28 U.S.C. § 158(a)(1), appeals from non-final bankruptcy court orders may be taken only "with leave" of the district court, *see id*. § 158(a)(3). In this Circuit, a "flexible standard of finality" applies in bankruptcy cases. *In re AroChem Corp.*, 176 F.3d 610, 620 (2d Cir. 1999). Since the bankruptcy court order at issue authorized a Trustee to retain counsel and indicated that this decision would not be reconsidered, the order is final; accordingly, I have appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to review it. *See In re Kurtzman*, 194 F.3d 54, 57 (2d Cir. 1999); *In re AroChem Corp.*, 176 F.3d at 620.

When a district court functions in its capacity as an appellate court in a bankruptcy case, the order of the bankruptcy court is subject to plenary review. Thus, I "independently review the factual determinations and legal conclusions of the bankruptcy court," *In re PCH Assoc.*, 949 F.2d 585, 597 (2d Cir. 1991) (citation omitted). "Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. The bankruptcy court's legal conclusions are evaluated *de novo*. *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994).

---

[1]  On September 23, 2011 the Bankruptcy Court entered an order approving the retention of Troutman as substitute general and bankruptcy counsel for the Trustee except as to claims that the Trustee may assert against Abraham Klein or Global Realty Ventures. *See* Order Auth. Retention of Troutman, Sept. 23, 2011, ECF No. 1-26. Klein did not object to that order. Accordingly, the sole issue on review is whether Troutman may represent the Estate in any claims against Klein and Global Realty Ventures.

B.      *Background*

Section 327(a) of the Bankruptcy Code provides the basic authorization for the retention of professionals by the trustee:

> Except as otherwise provided in this section, the trustee, with the Court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

Under this provision, a trustee's choice of counsel is subject to the evaluation and approval of the bankruptcy court. *See In re Vouzianas*, 259 F.3d 103, 107-08 (2d Cir. 2001). "In exercising its approval function, however, the bankruptcy court should interfere with the trustee's choice of counsel only in the rarest cases, such as when the proposed attorney has a conflict of interest, or when it is clear that the best interest of the estate would not be served by the trustee's choice." *In re Smith*, 507 F.3d 64, 71 (2d Cir. 2007) (internal quotation marks and text modification omitted). Because "the relationship between attorney and client is highly confidential, demanding personal faith and confidence in order that they may work together harmoniously," courts give trustees wide breadth in selecting counsel. *See In re Mandell*, 69 F.2d 830, 831 (2d Cir. 1934).

The resolution of a retention dispute is a fact-intensive inquiry, subject to case-by-case determinations. As the Second Circuit stated in *Arochem*, "[w]hen evaluating proposed retention, a bankruptcy court should exercise its discretionary powers over the approval of professionals in a manner which takes into account the particular facts and circumstances surrounding each case and the proposed retention before making a decision." 176 F.3d at 621 (internal quotation marks omitted); *see also In re Harold & Williams Dev. Co.*, 977 F.2d 906, 910 (4th Cir. 1992) ("[T]he discretion of the bankruptcy court must be exercised in a way that it believes best serves the objectives of the bankruptcy system. Among the ultimate considerations

3

for the bankruptcy courts in making these decisions must be the protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding.").

      1.    *The Facts*

On May 26, 2010, Persaud filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. By order dated April 8, 2011, her Chapter 11 case was converted to a case under Chapter 7 pursuant to 11 U.S.C. § 1112(b).[2] By Notice of Appointment dated April 13, 2011, John S. Pereira (hereinafter the "Trustee") was appointed the Chapter 7 Trustee of the Estate. *See* Notice of Appointment of Trustee, ECF No. 1-2.

Pursuant to 11 U.S.C. § 327 and Rule 2014 of the Federal Rules of Bankruptcy Procedure, the Trustee initially sought authorization for the retention and employment of the law firm Pereira & Sinisi, LLP to assist in the administration of the Estate. *See* Application, June 17, 2011, ECF No. 1-3. However, on account of the "complex factual and legal issues involved," the Trustee determined that it was "in the best interests of the estate to retain a firm that not only can act as bankruptcy counsel, but also has the capacity and expertise to provide services in the areas of litigation, corporate, regulatory and tax." Application for Order Authorizing the Retention of Troutman ¶ 5, Aug. 9, 2011, ECF No. 1-5. Accordingly, the Trustee moved to permit Troutman – the firm the Trustee believed was best qualified to render these services to the Estate, *id*. at ¶ 6 – to be appointed as substitute counsel in lieu of Pereira & Sinisi.

In accordance with Rule 2014 of the Federal Rules of Bankruptcy, John P. Campo – Managing Attorney in Troutman – submitted a Declaration in support of the retention application indicating, *inter alia*, that the firm "does not have any interest adverse to the Trustee or to the Debtor's estate and is disinterested as that term is defined in section 101(14) of the Bankruptcy

---

[2]    Through a Chapter 11 bankruptcy, a business generally continues operating; a Chapter 7 bankruptcy generally brings the operations of a business to an end. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 (1993) ("Whereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors.").

4

Code." *Id.*, Ex. A., Decl. of John P. Campo ¶ 9. However, Appellant Klein disagreed that Troutman was disinterested, and on August 15, 2011, he objected to the Trustee's proposed choice of counsel. *See* Creditor Klein's Objections, Aug. 15, 2011, ECF No. 1-7. Thus, prior to giving its approval, the Bankruptcy Court was obliged to assess Klein's objections to Troutman's retention.

In his objection, Klein indicated that, *inter alia*, "Troutman is conflicted insofar as [it] w[as] retained by Abraham Klein with respect to one of the entities he owns and controls, Global Realty Ventures, which representation may currently be on hold, but said representation is still ongoing." Aff. of Mendel Zilberberg ¶ 12, Aug. 15, 2011, ECF No. 1-7.[3] As explained in the objection, Klein became interested in a joint venture related to the development of certain land in China and he formed Global Realty Venture, LLC ("Global Realty") in anticipation of this joint venture. In November 2008 Global Realty retained Troutman to provide preliminary due diligence on the project, including a site visit and the review of all documents relevant to the project. Klein indicated that Troutman is conflicted because the representation "has not been concluded and is still ongoing," *id*. at ¶ 54. In light of Troutman's work on behalf of Global Realty in China, Klein alleged that Troutman is not "disinterested," as the term is understood in 11 U.S.C. § 327(a) and should, therefore, be precluded from representing the Estate. *Id*. at ¶¶ 51, 56-57.

Central to his objection was Klein's assertion that he provided confidential information to Troutman regarding his interest in a home health care business known as Caring Health Agency ("Caring"). Prior to the bankruptcy filing, Persaud and Klein were adversaries in litigation over competing claims to ownership of Caring; Persaud's claim to ownership of all or part of Caring is a potential asset to be investigated and pursued by the Trustee. Klein asserted that Troutman should not be permitted to represent the Estate because "[his] interests in China intersected with [his] interests in Caring," Klein Aff. ¶ 11(c), ECF No. 1-7. Accordingly, Klein

---

[3]   Separately, Klein argued that the Court should not approve Troutman's application because it would be unnecessarily expensive and the representation would "not yield any meaningful benefit." Aff. of Mendel Zilberberg ¶ 12. Aug. 15, 2011, ECF No. 1-7. He did not pursue this argument in the Bankruptcy Court and does not raise it on appeal.

argued that "it is reasonable to assume that there is a possibility that Troutman Sanders LLP will . . . investigate and/or litigate . . . the very same matters for which I have retained them to represent me." *Id.*

Campo submitted a Supplemental Declaration disputing Klein's description of Global Realty's relationship with Troutman.[4]  Aff. of John P. Campo in Response to Objections of Klein, Aug. 19, 2011, ECF No. 1-10.  Arguing that Klein had overstated the extent and duration of Troutman's involvement in order to manufacture a conflict, Troutman urged the Bankruptcy Court to permit it to represent the Estate and affirmed that its "prior representation of Global Realty in an unrelated matter will not affect Troutman's representation of the Trustee in this case, including Troutman's ability and willingness to be adverse to Klein." *Id.* ¶ 7.  Campo asserted that, "during the course of the prior representation, Troutman did not become privy to any confidential information that would have any bearing on this case and the disputes herein," *id.* ¶ 9.

Continuing the tit for tat, Klein submitted an additional 41-page supplemental legal memorandum along with a supplemental affidavit from Klein contradicting Troutman's description of its legal relationship with Global Realty and disputing most aspects of Troutman's description of its relationship with Global Realty and Klein.  *See* Klein Further Objection, Sept. 6, 2011, ECF No. 1-16.  In addition, Klein laid out a new legal argument as to why Troutman should not be permitted to represent the Estate.  Rather than looking to the Bankruptcy Code, Klein argued that Rules 1.7 and 1.9 of the New York Rules of Professional Conduct were the appropriate guide.  In a footnote, Klein indicated that 11 U.S.C. § 327 was a separate basis to preclude Troutman's representation of the Estate.  Klein stated – without attribution – that "because Section 327's conflict of interest provision is, in effect, already encompassed in the relevant New York

---

[4]  In this Supplemental Declaration, Campo indicated that Troutman lawyers in Shanghai were retained by Global Realty to conduct due diligence about a prospective land deal; however, he asserted that "Troutman's prior representation has been concluded . . . [as of] December 2008, and the matter is closed." Supp. Decl. of John P. Campo ¶¶ 5-6, Aug. 24, 2011, ECF No. 1-9.  Moreover, he disputed Klein's assertions that a New York partner, Aurora Cassirer, was Klein's "point person," stating that Cassirer "never billed time to the matter," and "never met Klein," ¶ 8.  On September 7, 2011, Ms. Cassirer submitted an Affidavit "confirm[ing] that the information Mr. Campo has provided to the Court is accurate," Aff. of Aurora Cassirer ¶ 2, Sept. 7, 2011, ECF No. 1-17.

Rules of Professional Conduct," it was not necessary to "to separately address herein disqualification pursuant to Section 327." *See id.* at 15 n.5.

Applying the New York Rules of Professional Conduct, Klein's submission set forth a lengthy argument as to why Troutman must be disqualified. This argument was not rooted in the Bankruptcy Code; instead, he argued that "(1) that there was an attorney-client relationship . . .; (2) that the matters involved . . . are substantially related; and (3) that the interest of the present client and former client are materially adverse." *Id.* at 21 (citing *Schwartz v. Jenkins*, 4 Misc.3d 298, 299 (Civ. Ct. City of N.Y.)). Having set forth how he satisfied each of these three prongs, Klein argued that – as a result – Troutman must be disqualified from representing the Estate. *Id.* at 31. Further, Klein argued that Troutman violated Bankruptcy Rule 2014 by failing to fully disclose the nature of its prior relationship with Klein, and that this violation of the Bankruptcy Rules was an independent basis for disqualification. *Id.* at 36.

Judge Stong scheduled a hearing on the Retention Application to ascertain whether "Troutman Sanders, LLP is a 'disinterested person' as required by Bankruptcy Code Section 327(a)," Pre-Hearing Order, Sept. 13, 2011, ECF No. 17-1. Both the Trustee and Klein agreed that the purpose of the hearing was to ascertain whether "Troutman is 'disinterested' within the meaning of Section 327(a) of the Bankruptcy Code." *See* Joint Pre-Hearing Statement 10-12, Sept. 14, 2011, ECF No. 1-20. This "Joint Pre-Hearing Statement" also included a broader list of legal and factual issues for the court to decide. *See id.*[5]

---

[5]   On September 19, 2011, the parties submitted an "Amended Joint Pre-Hearing Statement," agreeing that the following issues of fact and law were to be decided by the Court:
   1. Whether [Global Realty] is a current client of Troutman Sanders.
   2. Whether [Global Realty] is a former client of Troutman Sanders.
   3. Whether Abraham Klein personally is a current client of Troutman Sanders.
   4. Whether Abraham Klein personally is a former client of Troutman Sanders.
   5. Whether any confidential information was provided to Troutman in connection with the prior engagement.
   6. Whether Troutman is "disinterested" within the meaning of Section 327(a) of the Bankruptcy Code.
   The parties then listed seven additional items which each side thought should be resolved by the Court but about which they could not agree. *See* Amended Joint Pre-Hearing Statement 14-15, Sept. 19, 2011, ECF No. 1-23.

7

      2.      *The Evidentiary Hearing*

Beginning on September 7, 2011, Judge Stong held an evidentiary hearing that spanned a total of 9 days over several months, concluding on December 11, 2011. The court heard testimony from Klein, his brother Hershel Klein, Campo, and Cassirer. The court also permitted Klein to obtain discovery from Troutman as to its conflicts-check procedures, and granted Klein's motions to compel the production of documents. *See e.g*., Klein Letter, Oct. 19, 2011, ECF No. 1-31; Resp. to Mot. Oct. 21, 2011, ECF No. 32-1. For example, at Klein's request, the court ordered Troutman to produce documents relating to Troutman's conflicts-checks procedures dating back to 2008. *See* Order, Nov. 29, 2011, ECF No. 1-46. Moreover, the court allowed Klein to submit an expert affidavit from Professor Bruce A. Green, an expert on New York ethics rules. Tr. of Proceedings 9, Nov. 28, 2011, ECF No. 48 (indicating that the testimony of Professor Green would be received via affidavit and cross examination would be waived). In short, the court permitted a wide range of discovery and conducted an exhaustive review of documents relating to Klein's objections to Troutman's retention.

      Klein testified at the hearing. The bulk of his testimony centered on his claim that Troutman should not be permitted to represent the Estate in pursuing any claims against him because, in 2008, he shared confidential information with Troutman about the specific issue in hot dispute in the Bankruptcy – whether Persaud or Klein had ownership rights in Caring. In this testimony – which Judge Stong later decided "lack[ed] credibility," *see* Mem. Decision 27, Klein stated that he "discussed with [Troutman lawyers] my investment in Caring," Tr. of Proceedings 10, Nov. 14, 2011, ECF No. 1-35. He summarized his opposition to Troutman's retention as follows: "I gave them a lot of information – a lot of confidential information in relation to my dealing . . . essentially giving them a roadmap to everything about my finances specifically related to Caring. If they would be allowed to represent the Trustee, they would be able to use that information to help the Trustee try to take away my rights or ownership rights in Caring. I don't

8

think that's right." *Id.* at 24-25. However, on cross-examination, Klein admitted that he did not provide Troutman any specific information related to Caring. *Id.* at 25-27. Moreover, when asked, "has there ever been . . . communication between you and your brother on the one hand and Troutman on the other hand that refers to Caring," he answered that there had been no such communication. *Id.* at 30-31.[6]

3.   *The Decision of the Bankruptcy Court*

On March 5, 2012, Judge Stong issued an order rejecting all of Klein's objections. *See* Mem. Decision, March 5, 2012, ECF No. 1-61. Applying the Bankruptcy Code's legal standard on disinterestedness, the court held that "the Trustee has shown that Troutman is disinterested," *id.* at 16. Next, the court held that "Klein's objection also implicates the legal standard for disqualification under New York's professional conduct rules," *id.* at 13. Applying the Second Circuit's three-part test on motions to disqualify, *see id.* at 18 (citing *Hempstead Video Inc., v. Vill. of Valley* Stream, 409 F.3d 127, 132 (2d Cir. 2005)), the Court found that "Klein has not shown that Troutman should be disqualified," *see id.* at 27. Last, the court held that Troutman's failure to disclose promptly its prior representation of Global Realty and its relationship with Klein did not merit the "harsh remedy of disqualification." *Id.* at 29. Having overruled each of Klein's objections, the court gave its authorization to the Trustee to employ and retain Troutman as general and bankruptcy counsel on all claims, including claims that the Trustee may assert against Abraham Klein or Global Realty.[7]

Klein now appeals from this decision. He contends that the Bankruptcy Court's decision must be reversed and Troutman must be precluded from representing the Estate in claims that may arise against Klein. Specifically, Klein raises three arguments: (1) the Bankruptcy Court

---

[6]   Klein also testified that Global Realty's engagement agreement with Troutman did not reference the "Trade Fame Group," "Christine Persaud," "Caring," or any effort to "obtain[] financing for the China Project." Tr. of Proceedings at 31-32. Klein also backed away from statements submitted earlier in which he stated that the China Project was "picking up momentum in 2008."

[7]   On March 14, 2012 Klein moved for reconsideration. After briefing and oral argument, Judge Stong denied the motion two days later on April 26, 2012.

9

erred as a matter of law when it failed to disqualify Troutman for its alleged failure to set forth its connections with Klein as required by Bankruptcy Rule 2014; (2) it was legal error to permit the retention of Troutman "when Troutman failed to meet its burden of proof set forth under 11 U.S.C. § 327(a);" and (3) it was legal error to permit the appointment of Troutman because it was "engaging in impermissible conflicts of interest in violation of Rule 1.7 and/or Rule 1.9" of the New York Rules of Professional Conduct ("N.Y.R.P.C."). *See* App. Br. at 3.  I consider each argument in turn.[8]

C.      *Discussion*

1.  *The Refusal to Disqualify Troutman*

Federal Rule of Bankruptcy Procedure 2014(a) requires that an application for employment of an attorney under Section 327 "shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest . . ."  By requiring parties to disclose all connections, the rule provides bankruptcy courts with sufficient information to determine whether any connection disqualifies the applicant from the employment sought, or whether further inquiry should be made before deciding whether to approve the employment.  *See In re Lee*, 94 B.R. 172, 176 (Bankr. C.D. Cal. 1988).  The decision as to what information to disclose "should not be left to counsel, whose judgment may be clouded by the benefits of the potential employment."  *Id.*  Accordingly, Rule 2014 is a broad rule of disclosure.

Although the obligation to disclose is mandatory, the penalty for failing to comply with the strict disclosure requirements is left to the discretion of the court.  *See, e.g.*, *In re Enron Corp.*, No. 02 Civ 5638, 2003 WL 223455, at *6 (Bankr. S.D.N.Y. 2003); *In re Combe Farms*, 257 B.R. 48, 54 (Bankr. D. Idaho 2001) (reducing fees by ten percent as a sanction for failure to make

---

[8] In his reply brief, Klein raised additional legal and factual arguments for the first time.  Having raised these issues for the first time in a Reply brief, I decline to address them.  *See United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003) ("We will not consider an argument raised for the first time in a reply brief.")  In any event, based on my thorough review of the lengthy record, I find that the arguments lack merit.

10

adequate disclosures under Rule 2014). If the court perceives a problem with a proposed professional or his disclosures, the bankruptcy court has at its "disposal [many] permissible remedies, including (but by no means limited to) disqualification." *In re Martin*, 817 F.2d 175, 182–83 (1st Cir. 1987) (internal citations omitted). The decision as to what penalty, if any, should attach to a violation of Rule 2014 is left to the sound discretion of the bankruptcy judge, who is "in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails." *Id.*

        Here, the Bankruptcy Court concluded that Troutman's *initial* disclosure was incomplete, but held that it "promptly filed a supplemental Bankruptcy Rule 2014 declaration" setting forth the missing information. *See* Mem. Decision 29. Despite this late disclosure, the court found that the "timing and circumstances" of the late disclosure did not merit disqualification. On appeal, Klein argues that Troutman's violation of Bankruptcy Rule 2014 warrants disqualification and that it was error for Judge Stong not to have required it. Appellant Br. at 9-13. He suggests that the mandatory nature of Rule 2014's disclosure requirement creates a mandatory rule of disqualification when it is violated. It does not. Courts are vested with wide discretion to punish the failure to comply with Rule 2014's strict mandates; they are not *obliged* to disqualify counsel. Disqualification is especially inappropriate where, as here, Klein admits that Troutman's omissions from its Rule 2014 disclosures were negligent, not willful. *See* Mot. to Reconsider ¶ 11, March 14, 2012, ECF No. 394 ("The instant matter is not a case where information was discovered subsequently. Here, information was there but negligently left out."). Considering the record as a whole, including Troutman's prompt supplementation of the record, I conclude that Judge Stong acted well within her discretion in declining to disqualify Troutman for its initial negligent failing to disclose the full scope of the firm's prior dealings with Klein.

2. *The Finding that Troutman is "Disinterested"*

The Bankruptcy Court held that "Troutman . . . is disinterested as defined in Bankruptcy Code Section 101(14) and that Troutman's employment is necessary and in the best interests of the Debtor's estate," *See* Order Auth. Retention of Troutman 1-2, March 5, 2012, ECF No. 1-52. The court concluded that, "based on the entire record," "*the Trustee* has shown that Troutman is disinterested within the meaning of the Bankruptcy Code Section 327." Mem. Decision 16 (emphasis added).

In his "Issues Presented," Klein states that he is asking this Court to review whether the Bankruptcy Court erred, as a matter of law, by permitting Troutman to serve as counsel for the trustee "when Troutman failed to meet its burden of proof set forth under 11 U.S.C. § 327(a)." Appellant Br. at 3. I review the factual basis of the Bankruptcy's Court's conclusion for clear error, and its legal conclusions *de novo*.[9]

Section 327(a) authorizes the employment of professionals who "do not hold or represent an interest adverse to the estate, and that are disinterested." The term disinterestedness is defined in the Bankruptcy Code to mean a person that—

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14)

---

[9] I note that, in the body of his brief, Klein does not mention § 327(a) or the Bankruptcy Code's disinterestedness standard. Instead, he argues that "Troutman failed to meet its burden to show that the two representations are not substantially related," Appellant Br. at 14, which is not a standard that is part of § 327(a). The Appellee points out this oversight in its Response Brief, noting that "Klein does not contest that [disinterestedness] ruling on this appeal." Appellee Br. at 7. In his Reply brief, Klein does not contest this assertion or raise any basis for this Court to conclude that the Bankruptcy Court's conclusion that Troutman is "disinterested" should not be affirmed. Indeed, in his reply brief, Klein also fails to mention § 327(a) at any point.

The Second Circuit has held that the "disinterested" requirement implicates "only the personal interests" of the professional in question, requiring the professional actually to "have" such an interest. *In re AroChem Corp.*, 176 F.3d 610, 629 (2d Cir. 1999) (citing *In re BH & P*, 949 F.2d 1300, 1310 n. 12 (3d Cir. 1991)). The Court observed that Congress' use of the present tense was significant in construing this statute; accordingly, "counsel will be disqualified under section 327(a) only if it *presently* holds or represents an interest adverse to the estate, notwithstanding any interests it may have held or represented in the past." *Id.* (emphasis added) (internal quotation marks and text modification omitted). Applying this precedent, Judge Stong concluded that Troutman did not presently "hold" or "represent" interests adverse to the estate or to any creditor, including Klein.

I affirm the Bankruptcy Court's conclusion. The record contains nothing to suggest that Troutman presently has "an interest materially adverse to the interest of the *estate*," 11 U.S.C. § 101(14)(C) (emphasis added). As to whether Troutman presently has "an interest materially adverse to . . . any class of *creditors*," the Bankruptcy Court concluded that there was no current relationship between Troutman and the Appellants, *see* Memorandum Decision at 24, and that during Klein's relationship with the firm, he did not provide Troutman with any confidential information about his interest in Caring, the company over which Klein and the Trustee are now fighting. *Id.* at 27. Indeed, Judge Stong found that Klein's testimony was "at odds with the substantial and persuasive evidence," *id.* Based on my review of the extensive record, including the Bankruptcy Court's conclusion that Klein's testimony is not entirely credible, I find that this factual finding is not clearly erroneous. Finding no "other reason," *see* 11 U.S.C. § 101(14)(C), to conclude that Troutman presently holds an interest adverse to the estate or to any class of creditors, I affirm the district court's decision and hold that Troutman satisfied its burden under § 327(a) to establish that the firm does not hold or represent an interest adverse to the estate, and that the firm is disinterested.

13

3. *The Inquiry Under the Ethical Rules*

The Bankruptcy Court stated that "New York's professional conduct rules provide a framework to assess questions of conflict of interest for bankruptcy courts sitting in this jurisdiction," Mem. Decision at 17. I'm not persuaded that this is correct, especially since it is generally accepted that the standards for ethical conduct under the Bankruptcy Code are stricter than the local disciplinary rules of professional conduct.[10] In any event, I conclude that the Bankruptcy Court's findings should be affirmed as I agree that there is no actual conflict of conflict of interest present.[11] Where, as here, findings on review are based credibility determinations, they are entitled to "particularly strong deference." *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 64 (2d Cir. 1992). Despite a strong adverse credibility finding against him, the bulk of Klein's arguments are predicated on the assertion that his version of the facts should govern this appeal. For example, Klein asserts "it is undisputed that Appellant Klein disclosed confidential information to Troutman in August 2008," Appellant Reply Br. at 5.[12] But the Bankruptcy Court decided that Klein's testimony about the exchange of confidential information to Troutman was not credible and was "at odds with substantial and persuasive evidence to the contrary . . . . includ[ing] contemporaneous emails, documents and testimony," Mem. Decision at 27. Having reviewed the court's application of the *Hempstead* factors to the facts of this case, I

---

[10] For example, under New York Model Rule of Professional Conduct Rule 1.7(b), an attorney who represents one client whose interests are adverse to those of another client may continue such representation if each client consents. However, courts have recognized that conflicts waivers are not effective for purposes of satisfying the "adverse interest" requirement of § 327(a) of the Bankruptcy Code. *See, e.g.*, *Project Orange*, 431 B.R. 363, 374-75 (Bankr. S.D.N.Y. 2010) (holding that a conflicts waiver "cannot trump the requirements of section 327(a)"); *In re Perry*, 194 B.R. 875, 880 (E.D. Cal. 1996) (stating that "section 327(a) has a strict requirement of disinterestedness and absence of representation of an adverse interest which trumps the rules of professional conduct").

[11] The Bankruptcy Code permits representation to proceed unless the court determines that there is an actual conflict of interest. *AroChem*, 176 F.3d at 621 (discussing 11 U.S.C. § 327(c)). For example, in *AroChem*, the Second Circuit did not disqualify the firm because "there . . . [was] nothing . . . but raw speculation to support a claim that a conflict might develop." *Id*. at 626. Here, the Bankruptcy Court permitted a full hearing – which included multiple witnesses, expert affidavits, discovery, and extensive briefing. The court concluded – based on this record – that there was no merit to Klein's allegations that Troutman was privy to confidential information and would deploy that information against Klein in the bankruptcy proceedings, and that there was no current representation. Since there is no reasonably probable conflict of interest in Troutman's representation of the Trustee, I affirm Judge Stong's conclusion that Troutman's prior representation presents no barrier to Troutman being retained as counsel to the Estate.

[12] In its briefing before Judge Stong, Klein suggested that "the pendulum of credibility" swings heavily in favor of Creditor Klein and against the Troutman Firm. *See* Klein Further Obj. 8, n.3, Sept. 6, 2011, ECF No. 1-16. However, after hearing all of the testimony, Judge Stong decided to credit Troutman and not Klein.

affirm the conclusion that "Klein has not shown that Troutman should be disqualified," and that there is no impermissible conflict of interest present.  Mem. Decision at 27.

For the foregoing reasons, the order of the Bankruptcy Court is hereby affirmed.

So ordered.

_____
John Gleeson, U.S.D.J.

Dated: January 30, 2013
      Brooklyn, New York

15